705 A.2d 96

**Leonard Paul CIRINCIONE**

v.

**STATE of Maryland.**

**No. 494 Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 2, 1998.

472

474

476

Larry Allen Nathans, Baltimore, for appellant.

Gwynn Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief) Baltimore, for appellee.

**480**

THIEME, Judge.

Appellant Leonard P. Cirincione was convicted on 16 April 1987 by a jury in the Circuit Court for Baltimore City, Judge Kathleen O'Ferrall Friedman presiding, of first degree murder, attempted first degree murder, and assault. He was sentenced, respectively, to life, twenty years consecutive, and three years concurrent imprisonment. This Court affirmed on appeal, *Cirincione v. State*, 75 Md.App. 166, 540 A.2d 1151, *cert. denied*, 313 Md. 611, 547 A.2d 188 (1988). On 27 September 1995, appellant timely filed with the same circuit court his first and only petition for post conviction relief, pursuant to the Maryland Post Conviction Procedure Act, Art. 27, § 645A, and Maryland Rules 4–401 to 4–408. Judge David B. Mitchell conducted hearings on the petition on 21 May and 25 June, and he denied the requested relief on 20 December 1996. This Court granted the timely filed application for leave to appeal the denial, and appellant now presents us with two questions, which we have recast as follows:

I. Did the post conviction court err when it failed to find that appellant's right to effective assistance of counsel was violated prior to trial, during trial, or cumulatively?

II. Did the post conviction court err when it failed to find the appellant's right to a fair trial and due process were violated because the jury instruction on reasonable doubt was constitutionally deficient?

For the reasons set forth herein, we will affirm.

As appellant's claims alleging ineffective assistance of counsel are necessarily quite fact-intensive, we will relate only the basic facts at this point and supplement as necessary in discussion of each claim. On the evening of 12 June 1986, several Baltimore City police officers were directing traffic in the vicinity of Memorial Stadium. The Baltimore Orioles were playing at home that night, and the officers were facilitating the normal, pre-game parking process. Appellant approached the vicinity in his automobile and sped past a

number of officers who were directing him to turn and to stop. He swerved and accelerated toward Officer Michael Parker, who was forced to leap out of the way of the vehicle. Appellant then turned left, accelerated again, and started heading directly toward Officers Paul Aires and Richard Miller. Both initially signaled for appellant to stop, then both were forced to run for safety. Officer Aires was successful; the car merely brushed his clothing. Officer Miller was struck with great force. He died more than five weeks later as a result of the impact.

■ Appellant was tried in April 1987 for an assault on Officer Parker, attempted first degree murder of Officer Aires, and first degree murder of Officer Miller. The prosecution gave notice of its intent to seek the death penalty with regard to the latter offense. As appellant characterized in his brief to this Court, "It was undisputed at trial that Appellant acted recklessly when he struck Officer Miller with Appellant's automobile. The issue at trial was Appellant's mental state/capacity—at the time of the crime—to commit a willful, premeditated and deliberate murder." The lone defense presented was voluntary intoxication due to ingestion of phencyclidine (PCP), which, although not an excuse to a crime, can rebut the existence of a specific intent. In appellant's case, a successful defense of voluntary intoxication would have reduced his first degree murder and attempted first degree murder charges (which require a specific intent to kill) to ones of second degree (requiring the mere general intent of malice, i.e., extreme recklessness).[1] In essence, then, appellant presented no affirmative defense to the second degree murder charges or the assault charge and focused on challenging the existence of the specific intent to kill Officers Miller and Aires.

The evidence presented by the defense at trial was tightly focused on voluntary intoxication. The first thirteen defense

---

1. As Judge Moylan pointed out in *Cirincione v. State,* one may still be validly convicted of second degree murder even after proving one's incapacity to form any specific intent, based on the "depraved heart" theory of malice. 75 Md.App. at 171 n. 1, 540 A.2d at 1153.

witnesses were called for the purpose of establishing appellant's long history of drug abuse and his intoxication on the day of the collision. Several childhood friends of appellant testified to his PCP abuse extending as far back as the eighth grade, *i.e.,* around 1975. Another friend testified that appellant told her five days before the collision that he intended to buy some PCP flakes that night. The day before the collision, according to another friend, appellant was sitting on a couch talking with friends when he suddenly became non-responsive and perhaps even catatonic for several minutes before returning to at least partial normalcy. Several family members who ate dinner with appellant about an hour before the collision testified that appellant was oddly calm, that he had no appetite, and that he left the table early. Two different friends who had frequently seen appellant under the influence of PCP were shown a videotape of appellant being arrested at the scene and testified that appellant appeared to be intoxicated by PCP. The arresting officer testified that he discovered one partially smoked PCP cigarette butt in the ashtray of appellant's car, plus two more PCP butts and a roach clip in a 35-millimeter film canister in the pouch behind the driver's seat.

Appellant took the stand and testified about his long history of drug use and his intoxication on the day of the collision. He said he had gone on a PCP binge for about a week prior to the collision, having smoked PCP every day. He claimed to have smoked six or seven PCP cigarettes on the day of the collision. He said he started smoking them during the afternoon and then had two PCP joints within an hour of the collision. As he was driving in his car, he noticed he was starting to have trouble concentrating, and he turned down his radio. He testified that he entered a "dream state" and was only "semi-conscious." He heard a noise like a thud and then remembered coming out of his state, "like waking up," with police and a crowd of people around him. He claimed to have been unaware even then that he had hit a person with his car.

The final defense witness was Dr. Michael Spodak, an expert forensic psychiatrist. He testified as to the general

effects of PCP, and he explored its long-term effects on appellant. Based on appellant's school records and a psychological report prepared in anticipation of trial by defense expert Dr. Lee Richmond, Dr. Spodak testified that appellant had a "physical brain impairment" brought on by drug abuse and that this impairment made him especially susceptible to the effects of PCP. Dr. Spodak offered his expert opinion, based on the statements of the appellant and other witnesses, that when appellant struck Officer Miller with his car appellant was "severely intoxicated from the effect of PCP" and that appellant "possessed no reason or understanding at the time of the crime."

The jury evidently rejected the voluntary intoxication defense and convicted appellant of the most serious offenses charged, including first degree and attempted first degree murder. At the sentencing phase, the judge found appellant eligible for the death penalty but concluded that mitigating factors warranted a life sentence instead.

## I. Right to Effective Assistance of Counsel

Appellant alleges approximately eight different errors on the part of the post conviction court below. We have recast these claims of error in a roughly chronological order and for simplicity's sake have stated the first six claims in the form of alleged deficiencies of trial counsel:

A. Pretrial failure to investigate the findings of two forensic psychiatrists from the Medical Service of the Circuit Court for Baltimore City and another psychiatrist from the Clifton T. Perkins Hospital Center.

B. Pretrial failure to prepare appellant to testify on his own behalf.

C. Failure to deliver an effective opening statement.

D. Failure to present exculpatory medical records from the Baltimore City Jail.

E. Failure to produce Dr. Lee Richmond as a witness.

F. Failure to request jury instructions on depraved heart second degree murder and on the effect of expert testimony.

G. The cumulative effect of trial counsel's errors amounted to ineffective assistance of counsel.

H. The post conviction court erred when, in denying relief, it relied mainly on the fact that trial counsel did not testify as a witness at the post conviction hearings.

 The basic right to the assistance of an attorney at a criminal trial is guaranteed by the Sixth Amendment to the United States Constitution, made applicable to states via the Due Process Clause of the Fourteenth Amendment. *State v. Renshaw,* 276 Md. 259, 264, 347 A.2d 219, 223 (1975). We have long recognized that the right to counsel entitles individuals to more than the mere presence of someone who happens to possess a law degree. *Id.* at 268, 347 A.2d at 226. The right to counsel is the right to effective assistance of counsel, the benchmark of which is whether counsel's advocacy was sufficient to maintain confidence that the adversarial process was capable of producing a just result. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). In reviewing a claim of ineffective assistance of counsel, we apply the test announced by the Supreme Court in *Strickland.* Accordingly, one claiming ineffective assistance of counsel must demonstrate both that her counsel's performance was deficient and that the deficient performance prejudiced her defense. *Id.* at 687, 104 S.Ct. at 2064; *Oken v. State,* 343 Md. 256, 283, 681 A.2d 30, 43 (1996). Unless both are shown, it cannot be said that the conviction resulted from a breakdown in the adversarial process. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

 To demonstrate deficient performance, appellant must prove "that his counsel's acts or omissions were the result of unreasonable professional judgment and that counsel's performance, given all the circumstances, fell below an objective standard of reasonableness considering prevailing professional norms." *Oken,* 343 Md. at 283, 681 A.2d at 43.

With the benefit of hindsight, however, it is all too easy to mistake a sound but unsuccessful strategy for incompetency, and for this reason we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Thomas*, 325 Md. 160, 171, 599 A.2d 1171, 1176 (1992) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064). It is thus appellant's burden to overcome the dual presumptions that the allegedly deficient act or omission was the result of trial strategy and that the strategy was a sound one. *Oken*, 343 Md. at 283, 681 A.2d at 43.

Appellant must also show that the deficient performance by counsel prejudiced the defense. The specific burden is to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Oken*, 343 Md. at 284, 681 A.2d at 44. A reasonable probability of a different outcome is more than a mere "impairment" of the presentation of the defense, but appellant need not show that the result "more likely than not" would have been different. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068; *Oken*, 343 Md. at 284, 681 A.2d 30. A reasonable probability of a different outcome is, consistent with the purposes of the guarantee of counsel at trial, "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. This analysis is not actually outcome determinative, but focuses upon the fundamental reliability of the proceeding. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993); *Oken*, 343 Md. at 284, 681 A.2d at 44.

On appeal, we make our own, independent analysis of the appellant's claim, but we will defer to the post conviction court's findings of historical fact, absent clear error. *See State v. Thomas*, 328 Md. 541, 559, 616 A.2d 365, 374 (deferring to the post conviction court's resolution of a factual dispute regarding what trial counsel was told but reversing as to its legal significance). Furthermore, our review of the two

*Strickland* elements of ineffective assistance need not be taken up in any particular order. In other words, we need not find deficiency of counsel in order to dispose of a claim on the grounds of a lack of prejudice. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Oken,* 343 Md. at 284, 681 A.2d at 44.

## A. Pre-trial failure to investigate

■■■■■■ Appellant alleges his counsel was constitutionally deficient for failing to investigate the findings of three forensic psychologists who could have provided favorable testimony at trial. As we have already set forth, we must begin with the presumption that the acts *or omissions* of counsel are the product of reasonable professional judgment. Where a decision of counsel is based upon a merely partial investigation, the resulting tactical decision remains presumptively reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. In other words, counsel's assistance is not ineffective if he either makes reasonable investigations or makes "a reasonable decision that makes particular investigations unnecessary." *Id.* Even a decision not to investigate is entitled to "a heavy measure of deference to counsel's judgment." *Id.*

The facts surrounding this claim are as follows. Around September of 1986, defense counsel separately filed pleas of not competent to stand trial and not criminally responsible, which caused the court to refer appellant for psychiatric evaluation. The initial referral went to the Medical Service of the circuit court, where Drs. Jeffrey Janofsky and Jonas Rappaport conducted an initial screening of appellant. Dr. Janofsky was not yet board certified and was doing a post-doctoral fellowship in forensic psychiatry under Dr. Rappaport, then the Chief Medical Officer. Dr. Rappaport was and is a forensic psychiatrist of great renown. In a report issued in late September or early October, the two found that appellant was competent to stand trial but that he might have a viable insanity defense, and he was referred to the Clifton T. Perkins Hospital Center for a full evaluation. A team of

approximately six medical personnel interviewed appellant and conducted a multidisciplinary evaluation, with Dr. Steven Siebert as the chief evaluator. Their report of 11 February 1987 included their unanimous opinions that appellant was competent to stand trial and that at the time of the collision he was criminally responsible for his actions but voluntarily intoxicated by PCP.

In his petition for post conviction relief, appellant charged that counsel's failure to *present* testimony from each of these three above-named psychiatrists at trial was constitutionally deficient. At post conviction proceedings, appellant produced testimony from each psychiatrist indicating that each would have been willing to testify on behalf of appellant if subpoenaed, but that trial counsel never contacted them. Each further testified that, with modest preparation, each could have offered an expert opinion that appellant was intoxicated by PCP at the time of the crimes, that his level of intoxication was "severe," and that the intoxication had a significant impact on appellant's ability to perform. More specifically, Dr. Janofsky testified to the post conviction court that appellant's intoxication "had a substantial impact on his ability ... to think rationally." Dr. Rappaport testified that appellant "was severely impaired in terms of his ability to know, understand, appreciate what was going on." Dr. Siebert testified, "[T]he state of mind that resulted ... would be equivalent to a state of stupor, anesthesia, could include a total loss of consciousness and loss of awareness of surroundings." Appellant produced two further witnesses who are experts in the field of criminal defense representation: Thomas Saunders, Esq., and Professor Fred W. Bennett, Esq. They testified to the complete unreasonableness of trial counsel's failure even to investigate the opinions of such potentially crucial medical experts. Neither appellant nor trial counsel took the stand.

The post conviction court found no deficiency of representation:

While trial counsel did not interview these doctors individually prior to trial, he was nonetheless aware of their opinions because he had copies of their reports, and he was

consulting with Dr. Spodak regarding their findings. Trial counsel went so far as to make a pre-trial motion to prevent the State from obtaining copies of the reports prepared by the Perkins psychologists. [Citation omitted.] Based on that motion, it is evident that trial counsel was aware of the content of the reports and made a conscious decision regarding the testimony of the psychiatrists who had prepared them. Given the inability of these psychiatrists to reach an opinion to an acceptable degree of medical certainty, the critical issue prior to the guilt determination stage of the case, trial counsel's alleged failure to subpoena these witnesses was a valid trial tactic.

Appellant has slightly recast the issue in his appeal, arguing that counsel was deficient in failing to *investigate* the reports. While this could be considered an unpreserved argument, the State has not pressed this issue and the interests of justice persuade us to permit the modest modification. The appellate argument is, in effect, a rebuttal of the post conviction court's finding that the failure to present these witnesses was a valid trial tactic. In other words, according to appellant, the failure to subpoena and call the three psychiatrists cannot be considered a valid trial tactic if counsel was deficient in failing to gather the information necessary to make a reasoned judgment as to tactics.

We agree with the post conviction court that the decision not to present the testimony of any of the three psychiatrists was a valid trial tactic.[2] The trial testimony

---

2. While we agree with the post conviction court with regard to this mixed question of law and fact, we must take issue with one portion of the lower court's reasoning. That court noted that none of the three experts was able to form an opinion before the conclusion of the trial. The testimony of the doctors at the post conviction hearings, however, demonstrates that Dr. Rappaport and perhaps Dr. Siebert did in fact form expert opinions as a result of the limited contact they had with appellant prior to trial, and all three testified that they would have been able to form their opinions prior to trial if asked and if given access to further available information. This portion of the post conviction court's reasoning is not supported by the record nor particularly persuasive, and we do not rely upon it.

proffered from the three psychiatrists would have been essentially cumulative, and the failure to present cumulative evidence generally fails to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test. *Oken*, 343 Md. at 287–88, 681 A.2d at 45; *Gilliam v. State*, 331 Md. 651, 679, 629 A.2d 685, 699 (1993). Trial counsel called Dr. Spodak to testify for the defense at appellant's trial, and as Judge Moylan noted in appellant's direct appeal:

> In no sense was the opinion of Dr. Spodak austerely limited. He testified at great length. He was allowed to testify, in the abstract, as to the general effects of PCP on the mind and on behavior. He fully explicated such phenomen[a] as "chemical dependence," "craving," "tolerance," "distorted sense of reality," "depression," "euphoria," "difficulty with impulse control," "auditory hallucinations," "extremes of violence in very high doses," "catalepsy," "a trance-like state where you have diminished responsiveness," and "waxing and waning of the effects of the drug."
>
> Dr. Spodak was then allowed to explore the appellant's long history of drug abuse. He described the appellant's "physical brain impairment" as indicated by school records and psychology tests showing a result of "half normal" in "organic mental function." Dr. Spodak testified that the appellant's "neurological impairment" made him "specifically susceptible to the effects of PCP." He explained that the effect of PCP would be "even worse" on appellant than on others. Dr. Spodak speculated that the appellant would become "more impulsive, go into one of those trance-like states, be more susceptible to losing touch with reality," and that the waxing and waning effect would be "more prominent with him as a result of some of the brain damage that we found on these tests."

75 Md.App. at 178, 540 A.2d at 1157. Although the trial court prevented Dr. Spodak from testifying as to the ultimate fact of appellant's capacity to form a specific intent, Dr. Spodak was permitted to state the penultimate fact that appellant "possessed no reason or understanding at the time of the crime." Appellant has not directed our attention to any potential

testimony by the three un-called experts the substance of which was not already before the jury via Dr. Spodak. We find that trial counsel was not deficient for failing to present this cumulative testimony and that appellant has failed to demonstrate any prejudice by its absence.

██ As for appellant's rebuttal argument that the failure to investigate was itself deficient, many of the same considerations cause the claim to fail. The post conviction court specifically found that trial counsel retained Dr. Spodak as a defense expert witness, received the two relevant medical reports, was aware of their conclusions, provided them to Dr. Spodak, consulted with him regarding them, and filed a pretrial motion to prevent the State from obtaining access to them. Although no further investigations were undertaken regarding the specific opinions contained in the reports, Dr. Spodak and trial counsel together decided to retain an additional medical expert, Dr. Richmond, to bolster Dr. Spodak's testimony regarding the effects of long term PCP abuse on appellant. We conclude from these findings that the decision not to investigate the reports was a conscious and tactical decision, not an oversight. The presumption, therefore, remains that the decision not to investigate further was not deficient.

Appellant responds with three arguments. First, he directly challenges the conclusion that counsel's decisions were in fact the result of trial tactics and argues that counsel's performance throughout the representation demonstrated a marked absence of any coherent strategy regarding the use of experts. He claims that although trial counsel filed a pre-trial motion to preclude the introduction of any evidence from the Perkins psychiatrists, counsel reversed himself midway through trial when he unsuccessfully attempted to have their findings introduced through Dr. Spodak on the stand.[3] Trial counsel then reversed himself again, according to appellant, by failing to

---

**3.** The judge sustained objections to the attempt to introduce expert opinions through another expert, and we affirmed this ruling on appeal. *Cirincione,* 75 Md.App. at 182–84, 540 A.2d at 1159–60.

call the Perkins psychiatrists when Dr. Spodak was not permitted to state their findings. Where appellant sees wild reversals, however, we see consistency. Trial counsel may have not wanted to place the Perkins psychiatrists on the stand, where they would have been subject to cross-examination by the State, even though he was willing to see their conclusions come before the jury through Dr. Spodak. Contrary to appellant's characterization, counsel's pre-trial motion was not a motion to suppress evidence but a motion to prevent the State from gaining access to the Perkins reports. The later efforts to place the conclusions of the Perkins doctors before the jury without calling them to the stand shows a consistent motive, since any written reports of experts actually testifying must be turned over to the prosecution. Md. Rule 4–263(d)(2). Counsel may have been concerned with inconvenient inconsistencies contained in those reports, or he may have been concerned that the Perkins doctors, having examined appellant on behalf of the court, were not subject to the patient-psychiatrist or the client-attorney privilege. We need not identify the exact rationale, for it is appellant's burden to show that trial counsel's actions were unreasonable, and this he has not done.

Second, appellant challenges the reasonableness of counsel's strategy and argues that the lost testimony, although repetitive, was still crucial to his defense because it would have lent independent support to appellant's own testimony that he was too intoxicated at the time of the collision to have formed the requisite specific intent. He claims the testimony would have been all the more persuasive because the three doctors were "employed by the State," and defense expert Saunders testified at the post conviction hearings that it would have had an impact on the jury if individuals with different credentials and backgrounds gave similar testimony. We find neither the testimony to be so crucial nor the strategy to be so unreasonable.

Appellant has called our attention to numerous cases involving failure to investigate potential testimony, but

in only three of these cases was counsel found deficient where the substance of the testimony was already before the jury through another witness. *See Code v. Montgomery,* 799 F.2d 1481, 1483–84 (11th Cir.1986); *Nealy v. Cabana,* 764 F.2d 1173, 1177–80 (5th Cir.1985); *In re Jones,* 13 Cal.4th 552, 54 Cal.Rptr.2d 52, 59–60, 917 P.2d 1175, 1182–83 (1996). In each of these cases, the testimony already presented had come from the defendant alone, his version of events was a matter of dispute, and the missing witness could have given independent corroboration of the defendant's version. In appellant's case, the trial dispute was not over whether PCP causes intoxication but whether appellant was sufficiently intoxicated. The experts' opinions on this issue were not of independent origin but were almost entirely dependent on appellant's own version of events, and thus the corroborative value was not very high. And, whatever corroboration could have been achieved through such expert testimony was itself already before the jury through Dr. Spodak. Ultimately, a decision whether to call any particular witness is essentially tactical in nature; *State v. Lloyd,* 48 Md.App. 535, 540, 429 A.2d 244, 247 (1981); *Shelton v. State,* 3 Md.App. 394, 401, 239 A.2d 610, 615 (1968); and we perceive no hard and fast rule that a decision not to call supplementary experts will necessarily be an inferior decision. Trial counsel put together a very coherent presentation of the defense's case, with multiple witnesses testifying to appellant's patterns of drug use, appellant's own testimony of drug use that day, and concluding expert opinions that appellant had an augmented susceptibility to PCP and possessed no ability to reason at the time of the crime. Dr. Spodak's professional reputation was (and remains) excellent, and at the time he was in charge of administering all services at Perkins hospital pertaining to the criminal justice system. Whatever might have been gained by presenting supplemental but repetitive expert opinions also might have been reasonably expected to result in loss of dramatic impact, confusing minor variations of opinion, or damaging cross-examination into inconsistent statements made by appellant. To claim that presenting this additional testimony would have

been more persuasive is an appeal to the same "distorting effects of hindsight" which we are called upon to eliminate in our assessment of trial counsel's performance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. We cannot know whether a different trial strategy would have led to a different result, but the fact that the selected strategy was ultimately unsuccessful does not mean that it was an unreasonable choice.

Lastly, appellant makes much of the fact that this was a death penalty case and that in such cases there would have been no excuse for failing to investigate every possible lead. While the severity of the potential sentence may be a factor in assessing counsel's performance, the fact that this was a capital trial does not alter the standards for effective assistance of counsel. After all, *Strickland* itself was a death penalty case. Furthermore, appellant's argument is weakened by the fact that the death penalty was not imposed in this case, rendering harmless any deficiency arising solely from the capital nature of his trial. Trial counsel investigated and procured the thoroughly adequate expert opinions of Drs. Spodak and Richmond, and his valid decision not to investigate the similar opinions of other experts is not rendered infirm by the potential for a death penalty. In sum, having made a valid decision to rely on particular experts for the necessary testimony at trial, counsel was under no constitutional duty to conduct further investigations into the potential testimony of other experts. The decision not to investigate resulted in no deficiency of representation and no prejudice to appellant, and appellant was not denied effective assistance of counsel thereby.

### B. Pretrial failure to prepare appellant to testify

Appellant's petition challenged the adequacy of his representation by asserting that trial counsel failed to prepare appellant to take the stand in his own defense at trial. This failure to prepare him resulted in prejudice, appellant claimed, because it "caused him to appear unsure of his answers and less credible before the jury." In support of this contention, appellant placed primary reliance on an exchange recorded in

the trial transcript near the conclusion of a rigorous cross-examination conducted by then Assistant State's Attorney Timothy Doory:

Q. How long is it that you have had to sit down and think about what your testimony was going to be here in the courtroom?

[Defense Counsel]: Objection, Your Honor.

THE COURT: Overruled.

A. How long? I hadn't planned any of this, I am telling the jury from the bottom of my heart the absolute truth, and I thought about what I was going to say when they asked me the questions. I am going to tell the jury the absolute truth of what I know about this. I hadn't planned any of this.

Q. None of this?

A. I had no idea what questions this man was going to ask me or even my attorney, we hadn't gone over this, I hadn't planned any of this. The questions are asked of me, I am telling the absolute truth from the bottom of my heart. I am telling you the truth.

Q. You haven't gone over with anybody what you are going to testify here to?

A. The last time my attorney talked to me, he gave me a statement, the statement that I had made, and he gave that to me to read. He said this is the statement that you made, and I said I don't need to read it, I know what the statement is.

Q. That's the entire preparation and planning you have made to come here and testify?

A. Well, I think I am telling you the truth. So, from the truth, what do you need to plan? I am telling you like it is. I mean, I am telling it like it is, I am not trying to conceal anything.

At the post conviction hearings, neither appellant nor trial counsel took the stand, so the post conviction court lacked the benefit of live testimony by an eyewitness as to what had in

fact occurred between appellant and trial counsel prior to appellant's trial testimony. Instead, appellant presented expert testimony through Prof. Bennett that trial counsel had failed to prepare appellant to take the stand. On direct examination, Prof. Bennett stated:

[A]s I now find out talking to Mr. Cirincione, and it's apparent from the cross-examination, page 70 of his cross-examination on April 15th, when he said on cross, "I've literally not talked to my attorney about my testimony." [Trial counsel], in a capital murder case, put on his client without going through a Q & A or without—and without having him go through a mock cross-examination. That to me is gross negligence. And Mr. Doory was very, very tough on his cross-examination and good on his cross-examination of Mr. Cirincione, and he was utterly ill prepared for it, totally ill prepared and it hurt his case in my judgment....

Prof. Bennett was asked some follow-up questions on cross-examination (by the same Assistant State's Attorney who prosecuted appellant's trial). Prof. Bennett said the following:

A. I'm saying in this case, from my interview of Mr. Cirincione myself at the Maryland Penitentiary, he was not prepared by [trial counsel] either in a Q & A or in, what I'd say [is] the weaker way, topical direct and cross.

. . . .

Q. What area did you find that he was defective in?

A. The Defendant was not prepared for a grueling cross-examination by you [Doory].

. . . .

[T]he one area that was especially visible to the jury is that he lost his cool on the stand. It did [not] appear that he was counseled in that regards and he didn't—he didn't even have the date correct of the incident.

. . . .

I mean, if you read the direct and cross, the inference that's clear from the record is and as picked up very

clearly by Judge Friedman, not prepared, did not make a good witness.

. . . .

Q. Even extremely well-prepared witnesses are sometimes touched and get angry, don't [they]?

A. This went beyond that.

■ The post conviction court found a lack of evidence to support appellant's contention that trial counsel failed to prepare appellant, and we agree. To begin with, there is no credible, direct evidence that preparation did not occur. As we have already pointed out, neither appellant nor trial counsel (who appear to be the only persons with direct knowledge of what transpired between them) testified at the post conviction proceedings. The court had before it appellant's cross-examination statements from the trial transcript to the effect that no preparation occurred, but the post conviction court found that these statements are simply not creditable. We must concur. The statements are an entirely self-serving effort to counter the prosecutor's thinly-veiled implication that appellant's testimony had been coached. Appellant never even denies in these statements that he met with counsel in anticipation of taking the stand. Although Prof. Bennet claims that his expert opinion was based in part on his personal interview with appellant, even Prof. Bennet was not able to place before the court any direct evidence, in the form of statements by appellant or otherwise, that the pre-trial preparation did not in fact occur.

The only remaining basis on which one could conclude that trial counsel did not prepare appellant to testify is to draw inferences from the evidence of record, consisting of Prof. Bennet's post conviction testimony and the entire transcript of appellant's trial testimony. This record would support findings that, on cross-examination, appellant lost his "cool," was at times ineloquent, tripped over some relevant facts, and left a poor overall impression with the jury. This evidence (coupled with the jury's verdict) would also support the conclusion that appellant made a less than stellar witness. Appellant

argues that this evidence also demands the further conclusion that trial counsel's deficient preparation must be the cause of appellant's testimonial failings, and he appeals to us to reverse the lower court for refusing to draw this conclusion. We decline to do so, primarily because the evidence equally supports the less-attenuated conclusion that the Assistant State's Attorney conducted a masterful cross-examination or that appellant simply had a credibility problem in this case. With all due respect to Prof. Bennet, who did conclude that trial counsel failed to prepare appellant, we will not disturb the lower court's determination that appellant failed to produce the evidence necessary to support his claim.

### C. Failure to deliver an effective opening statement

Appellant claims that trial counsel was deficient for failing to deliver an effective opening statement. Specifically, appellant claims that the opening statement was too cursory and that it failed to present a coherent theory of the case. At the post conviction hearing, Prof. Bennett testified that the opening statement was flawed for being too short, for failing to personalize the appellant, for failing to recite the facts, for failing to tell the jury what verdict to reach, and for, in effect, apologizing to the jury.

The post conviction court found neither deficiency nor prejudice:

Petitioner's expert witness Bennett testified that trial counsel's opening statement was only six pages long. However, Bennett also testified that the State's opening statement was only eight pages in length. This Court can not find that the length of an opening statement is tantamount to deficient representation. No authority for such a conclusion has been suggested to the Court and none was found to support his allegation. After examining trial counsel's opening statement, the Court further finds that trial counsel did present a theory of the case. His theory was that this was not a case of first-degree murder because it was not willful, deliberate and premeditated. Furthermore, trial counsel focused on the issue of lack of motive, and offered

the explanation that Petitioner had ingested PCP and blacked out at the time of the incident. The Court finds that trial counsel's opening statement was not deficient and did not prejudice Petitioner's case.

We agree with the lower court. The opening statement was entirely adequate under the circumstances. The length of the opening statement is not of itself dispositive of either prong of the *Strickland* test, and there is no constitutional rule that counsel must employ any particular rhetorical technique in the opening statement. In fact, under certain circumstances it is not ineffective assistance to decline to deliver any opening statement at all, even in a death penalty case. *Hunt v. Smith,* 856 F.Supp. 251, 257 (D.Md.1994), *aff'd,* 57 F.3d 1327 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 724, 133 L.Ed.2d 676 (1996). Here, trial counsel explained in the opening statement the defense theory that appellant blacked out due to PCP intoxication. Although trial counsel voiced some compassion for the victim and the victim's family, he in no way offered an apology. It was not deficient to fail to recite the facts, as they were largely undisputed in the case; the crucial issues of specific intent and intoxication were adequately covered in the statement. There was no deficiency for failing to explain the legal tests for second degree murder or voluntary intoxication at this stage; it was enough to inform the jury that intoxication made him black out. In his brief to this Court, appellant for the first time faults trial counsel for promising in the opening statement to produce "doctors and psychiatrists" and then only producing one such witness at trial. This issue is not preserved for our review according to Rule 8–131(a), but we note that appellant's argument badly mischaracterizes counsel's statement.

## D. Failure to present exculpatory medical records from the Baltimore City Jail.

Appellant petitioned for post conviction relief based on trial counsel's failure "to fully investigate Petitioner's condition when he was re-arrested on 13 June 1986 and charged with attempted murder." On appeal the issue is re-cast as a

"failure to *present* Appellant's exculpatory medical records from the Baltimore City Jail." The post conviction court addressed only the issue of failure to investigate and was silent as to any issue of failure to present resulting evidence. Upon reviewing appellant's petition, we are convinced that it stated a claim of failure to investigate only, and the fact that such evidence was not introduced at trial was brought up merely to demonstrate prejudice arising from the failure to investigate. The claim based on failure to investigate is preserved for our review; the claim based on failure to present evidence is not. Md. Rule 8–131(a). We confine our review to the point preserved.

Appellant was initially arrested on 12 June 1986 at the scene of the collision near Memorial Stadium. At that time, he was charged with reckless driving, willfully disobeying the lawful address of a police officer, and driving under the influence of drugs and alcohol. He posted bail at 2:30 a.m. the next morning, and he was not re-arrested until approximately 2:00 p.m. on 13 June, this time on charges of attempted murder. On 14 June, appellant was transferred to the Baltimore City Jail Prison Hospital and admitted to the psychiatric ward. During his approximately four weeks at the hospital, various entries were made in appellant's medical records regarding his behavior and condition. Appellant highlights entries stating he was "agitated," "disoriented," and "violent," and that he was suffering from "paranoid behavior," was placed "on Ward 3 for close observation," should "be monitored frequently," and was on medication when he was discharged back to the general population of the jail.

Appellant claims that counsel's failure to investigate and discover these claims prejudiced his case because these medical records would have corroborated his own testimony at trial as to his severe abuse of PCP. The post conviction court found no basis for the claim:

[T]here is no proof that trial counsel did not investigate Petitioner's condition. Dr. Michael Spodak was retained by trial counsel to investigate the effects of PCP on the Petitioner, and there is no evidence that this clinician did not

inquire into and determine Petitioner's condition at the time he was re-arrested. On the basis of this record, we have no way to decide whether trial counsel made a tactical decision not to bring up Petitioner's condition at the time of his re-arrest at trial. Even if Petitioner was intoxicated at the time he was re-arrested, his intoxication could have been the result of PCP ingestion after his release. Consequently, Petitioner may not have been in the same condition at the time he was re-arrested as he was when he was first arrested at the scene. Furthermore, the Court finds that just because this issue was not raised at trial does not necessarily mean that trial counsel failed to investigate it. The Court simply does not know whether trial counsel investigated this issue, and without evidence to the contrary, *Bowers* [*v. State*, 320 Md. 416, 578 A.2d 734 (1990) ] requires a presumption that the challenged action was trial strategy.

We agree that appellant failed to present any evidence that the investigation was not done, and for this reason this claim of counsel's deficiency fails. The fact that none of the evidence proffered was presented at trial does not overcome the presumption that adequate investigations were conducted.

Furthermore, appellant has not demonstrated any prejudice resulting from the alleged failure to investigate. Appellant claims the evidence at issue "would have corroborated appellant's own testimony as to his severe use and abuse of PCP," but we find that it was only remotely probative of the issues actually contested at trial. Most of the jailhouse medical evidence pertains to the effects of appellant's long-term drug use, and long-term use was not at issue in the trial. The crucial question was whether appellant was actually intoxicated by PCP at the time of the collision, but the earliest jailhouse medical evidence pertains to appellant's condition at least two days after the collision and after an approximately twelve hour gap in the chain of custody of appellant. Such evidence is only minimally probative of the question of appellant's mental state at the time of the crime, and in the context of the trial its absence was not prejudicial.

### E. Failure to produce Dr. Richmond as a defense witness

Trial counsel planned to call Dr. Lee Richmond as an expert witness, presumably on the issue of appellant's mental capacity, but she never testified. The relevant facts are fairly set forth in the record at a sidebar discussion occurring after the conclusion of cross-examination of appellant and before calling Dr. Spodak to the stand as the final witness.

> [Defense Counsel]: The reason I'm here, Judge, I received a note from Dr. Richmond, she is gone.
>
> THE COURT: I saw her leave.
>
> [Defense Counsel]: She left me a note, she could not wait any longer.
>
> MR. DOORY: Are you going to arrest her?
>
> THE COURT: I didn't have a summons for her.
>
> MR. DOORY: Didn't she realize she was under court order to be here?
>
> THE COURT: She wasn't under an order of court. I told her to stay but I didn't order her to stay.
>
> . . . .
>
> [Defense Counsel]: What I will suggest, Your Honor, if Mr. Doory doesn't object, it's possible we could take Dr. Spodak's testimony. He had an opportunity to review the report and discuss it with her. I would still desire to call Dr. Richmond if it's possible tomorrow morning. If Mr. Doory again has no objection to the scheduling situation. But I think we can conclude Dr. Spodak's testimony this afternoon.
>
> THE COURT: I thought you had to have Dr. Richmond testify.
>
> [Defense Counsel]: That's the way I prefer to have it, Your Honor, but if I can't, I can't.
>
> THE COURT: Then you are going to bring Dr. Richmond back?
>
> [Defense Counsel]: Tomorrow morning.

Dr. Spodak was the final witness that evening. He was permitted to make reference to Dr. Richmond's report, to

explain her findings to the jury, and to base his own expert opinion on the report. On cross-examination, the State admitted Dr. Richmond's report into evidence but also called brief attention to the fact that she was not present to testify:

Q. Dr. Richmond, your associate, was here today, was she not?

A. Yes.

Q. And she left, did she not?

A. Yes.

The following morning, the defense rested without calling Dr. Richmond, after introducing her curriculum vitae and re-introducing jointly her report.

Appellant argues that the failure to call Dr. Richmond the following morning was ineffective assistance of counsel and resulted in prejudice to appellant by depriving him of "the testimonial impact of a live expert witness who would corroborate all other defense testimony." At the post conviction hearing, appellant presented expert testimony by Mr. Saunders that a reasonably competent attorney would still have called such an important witness. The post conviction court disposed of the claim on the basis of lack of prejudice. The court wrote:

> Petitioner contends that trial counsel failed to call Dr. Richmond, an expert witness retained by Petitioner, who could have supported Petitioner's defense and provided the foundation for further expert testimony by Dr. Michael Spodak. The Court will not speculate as to precisely what testimony Dr. Richmond would have provided. The report she prepared was, however, introduced in evidence as joint exhibit 1. The Court finds that trial counsel's failure to call Dr. Richmond was not prejudicial to Petitioner. Although she did not testify in person, her report was presented to the jury, and Dr. Spodak made reference to her findings during his testimony.

We agree with the post conviction court that appellant has failed to demonstrate any prejudice arising from the

failure to call Dr. Richmond to the stand, due to the fact that her report was explained by Dr. Spodak on the stand and was entered into evidence. Appellant does not point to any single piece of evidence of which the jury was deprived by Dr. Richmond's absence, and instead argues that prejudice arises from the fact that she was not there in person. Even given that the prosecution ambiguously drew attention to Dr. Richmond's absence at the close of its cross-examination of Dr. Spodak, the practical difference between Dr. Richmond's live testimony and her written report in this case is not significant enough to undermine confidence in the outcome of appellant's trial.

### F. Failure to request jury instructions

Appellant next claims that trial counsel was deficient for failing to request each of two different jury instructions. Specifically, appellant alleges counsel failed to request an instruction on depraved heart second degree murder and one on the effect of expert testimony. Appellant, however, never raised this issue in his petition for post conviction relief, nor in any amendment thereto. At the first of the two post conviction hearings, the issue of these two instructions was raised for the first time during the direct examination of expert witness Prof. Bennett:

Q. Let me ask you first, does your reading of the record find that there was any instruction given by the Court on expert witness[es]?

A. There was none.

Q. Was there any request made at the conclusion of the Court's instructions to ask the Court to give that instruction?

A. I could be wrong on this, [but] I think there was a request made, but [that instruction] wasn't given. And then there was no exception taken, which would be kind of silly to make the request and then not have it given [by] the Court and then not make an objection or take an exception to the Court's failure to give it. But at

any rate, there was no such instruction even though he had presented an expert, Dr. Spodak. He also didn't ask for, nor was given, an instruction on depraved heart second degree murder, even though that's a standard instruction in the Maryland Pattern Criminal Jury Instructions.

That hearing occurred on 21 May 1996, and a second hearing was held on 25 June. Appellant submitted a brief on 9 August 1996 in which he argued that the failure to request each of the two instructions constituted ineffective assistance of counsel, and he also re-raised the lack of the depraved heart instruction alone in a reply brief of 27 September. The State did not address the failure to request either instruction in its opposing brief, and the post conviction court similarly did not address either instruction in its memorandum and order.

 We decline to review this claim, because in failing to include it in his petition, appellant failed to raise the issue below. Maryland Rule 4–402(a) directs that a petition for post conviction relief "shall include: (3) The allegations of error upon which the petition is based." Petitions must further set forth the specific facts surrounding the claim of error; courts will not even consider under the Act so-called "bald allegations of error" without supporting facts. *Matthews v. Warden, Maryland House of Correction,* 223 Md. 649, 651, 162 A.2d 452, 453 (1960). Once the post conviction court has conducted hearings on the issues, Rule 4–407 directs the judge to "prepare or dictate into the record a statement setting forth separately each ground upon which the petition is based," as well as "the court's ruling with respect to each ground." Reading these rules together, it is plain that a court is expected to refer to the petition in order to know what claims are raised and upon what grounds. Lest there be any doubt, in 1991, in response to recurring departures from adherence to the rules of post conviction procedure, we noted the following with regard to the drafting of post conviction orders:

> The first step, obviously, is to identify each complaint made by the petitioner. The source for this will ordinarily be the petition itself, or any amendments to it, although *occasion-*

*ally* matters *mentioned* in the petition will be supplemented or clarified by evidence presented at a hearing or other presentations made to the court. It is important that the court, in its memorandum or dictated statement, identify those complaints with sufficient precision and completeness that, on an application for leave to appeal or in subsequent collateral proceedings, the court can determine with some assurance what, in fact, was litigated.

*Pfoff v. State,* 85 Md.App. 296, 303, 583 A.2d 1097, 1101 (emphasis added). Our above statement presupposes that courts need only address those claims actually raised in petitions (and amendments thereto), and that in deciding whether an alleged claim of error is stated with sufficient particularity by the petition, a court should allow the petitioner to develop the facts at a hearing before dismissing the claim as a "bald allegation."

Appellant failed to include in his petition claims that his trial counsel's failure to request jury instructions on expert testimony and depraved heart murder constituted ineffective assistance of counsel. Although we will not hesitate to remand for further proceedings when a court has failed to address a claim raised in the petition, we are aware of no case in which this Court or the Court of Appeals has done so for failure to address a claim *not* contained in the petition. *See Fennell v. Warden, Maryland Penitentiary,* 236 Md. 423, 425, 204 A.2d 75, 76 (1964); *Bauerlien v. Warden, Maryland Penitentiary,* 236 Md. 346, 347–49, 203 A.2d 880, 881–82 (1964); *Duff v. Warden of Maryland Penitentiary,* 234 Md. 646, 648, 200 A.2d 78, 80 (1964); *Smith v. Warden, Maryland Penitentiary,* 222 Md. 613, 614, 159 A.2d 837, 838 (1960). We cannot fault the post conviction court for failing to address a claim not set forth in the petition. Moreover, the lower court has already been quite forgiving in this regard, as its memorandum addresses eight other claims not contained in the petition. Since appellant has already enjoyed the windfall of having the post conviction court consider claims not properly placed before it, we certainly feel no remorse in declining to excuse yet another procedural lapse.

Appellant responds first by pointing to Maryland Rule 4–402(c), which states, "Amendment of the petition shall be freely allowed in order to do substantial justice." This rule is of no avail because appellant was not denied any opportunity to amend his petition. The record is simply devoid of any attempt to amend. Appellant's second argument, that he "orally amended the petition in the hearing itself," is unsupported by law or fact. Appellant's further reply that the State was put on notice of the new issues and failed to object to their being raised misses the point entirely. Claims for post conviction relief must be stated with specificity for the benefit of the court, not snuck past the State like damaging testimony, not to mention the fact that it would serve no purpose to allow amendments freely if amendments were not even required in order to raise new claims. The lower court legitimately did not address these claims because they were not raised in the petition, and we are not inclined to disturb this state of affairs.

## G. The cumulative effect of the deficiencies

Even when no single aspect of the representation falls below the minimum standards required under the Sixth Amendment, the cumulative effect of counsel's entire performance may still result in a denial of effective assistance. Apparently, this cumulative effect may be applied to either prong of the *Strickland* test. That is, numerous non-deficient errors may cumulatively amount to a deficiency, *Bowers v. State,* 320 Md. 416, 436, 578 A.2d 734, 744 (1990), or numerous non-prejudicial deficiencies may cumulatively cause prejudice. *Harris v. Wood,* 64 F.3d 1432, 1438–39 (9th Cir.1995). As ever, the touchstone is whether, in view of all the circumstances, our confidence in the result has been undermined by counsel's failings.

In our review of the cumulative effects of trial counsel's representation, we will not consider those of appellant's claims which he has failed to preserve (failure to demand certain jury instructions), nor those which failed because appellant could not produce enough evidence to establish the factual predicate (failure to prepare appellant to testify and

failure to investigate jailhouse medical records). To do otherwise quite simply would brush aside our own rulings, would permit appellant to avoid the consequences of his own procedural and evidentiary omissions, and would undermine *Strickland*'s presumption of adequacy of representation. We are left with the claims of failure to investigate the opinions of the three forensic psychiatrists, failure to deliver an effective opening statement, and failure to call Dr. Richmond as a witness. We have already ruled that no prejudice could be found in any of these claims individually, and we specifically found no constitutional deficiency in the first two.

The only precedent in this State for a finding of cumulative ineffective assistance of counsel is *Bowers*. As the post conviction court pointed out, however, the facts of *Bowers* are readily distinguished from the instant facts. In *Bowers*, the appointed attorney had a demonstrably contentious relationship with the defendant and only met with him sporadically before trial. The attorney unjustifiably failed to investigate physical evidence pertaining to the charged murder, including plaster casts of tire markings, fibers found under the victim's fingernails, and semen stains found in her underwear. At trial, the attorney presented no opening statement, put on no defense testimony, and committed numerous errors of omission regarding the cross-examination of the State's witnesses. Bowers's counsel additionally failed to request an instruction on voluntary intoxication as a defense to first degree murder, in spite of evidence presented by prosecution witnesses to support such an instruction.

Nothing in the claims before us, either taken individually or in the aggregate, has undermined our confidence that appellant received a fair trial. Because trial counsel adopted and maintained a cogent and effectual trial strategy regarding the use of expert opinions, we find little merit in the claim that counsel should have investigated the potentiality for presenting further expert testimony which may not have fit the strategy. We find even less merit in the claim that counsel should have composed a better opening statement. The only conceivably legitimate claim of simple error would be the

failure to call Dr. Richmond as planned, but we remain steadfast in our belief that her physical absence could not have prejudiced appellant, given that all of her known opinions were before the jury through Dr. Spodak and her own report. As for *Bowers*, we consider it instructive for the differences it bears to this case, rather than for any similarities it shares with it. We agree with the post conviction court that the cumulative effect of trial counsel's representation resulted in no violation of appellant's Sixth Amendment rights.

**H. Post conviction court's reliance on trial counsel's failure to testify**

██ Appellant claims the post conviction court erred because it based its denial of the petition "mainly on the fact that Appellant failed to call trial counsel as a witness at the post conviction hearing." Appellant correctly points out that there is no legal requirement that trial counsel testify at a hearing to determine the effectiveness of counsel's assistance, *see People v. Cole*, 775 P.2d 551 (Colo.1989), and appellant highlights certain language in the lower court's Memorandum Opinion that appellant claims evinces this erroneous reasoning.

Appellant badly mischaracterizes the lower court's language. The allegedly erroneous portion of the memorandum does not even apply to the entire petition but only to appellant's un-appealed claim below that trial counsel was deficient for failing to investigate the potential testimony of some witnesses who saw appellant as he was first brought into jail the night of the collision. The lower court, after noting that appellant had presented no evidence to show what those potential witnesses could have testified to, pointed out an even greater flaw in appellant's claim:

> Petitioner's trial counsel ... never testified at the post conviction hearings before this Court. While [trial counsel] was present in the courtroom during those hearings, neither side called him to testify as a witness in this matter. Consequently, the Court does not have the benefit of knowing why [trial counsel] handled the issues in this case as he

did. It is Petitioner's burden to present evidence that trial counsel was either aware of the favorable evidence and failed to present it, or failed to investigate the case, thus completely ignoring the evidence potentially in Petitioner's favor. Since no evidence has been offered to show that trial counsel did not meet with these individuals, and that his decision regarding them was anything but strategic, the Court finds that this claim must fail.

The court then moved on to discuss appellant's other claims in the order in which they were raised.

This passage in no way places the burden on appellant of calling trial counsel to the stand but merely points out that appellant must come forward with some actual evidence of a deficiency. If appellant cannot present a single witness with personal knowledge that counsel failed to investigate a matter, then the court is not likely to rule that such a failure occurred. Although appellant's claims repeatedly were defeated on the basis of a lack of evidence, a lack that could have been avoided if any one witness (including trial counsel) could have testified from personal knowledge, that does not mean that the post conviction court required trial counsel to testify as a condition of granting appellant's petition.

## II. Constitutionality of the Reasonable Doubt Instruction

Appellant's second theory of entitlement to post conviction relief is an allegedly improper jury instruction as to reasonable doubt. The instruction given to the jury, as set down in the record, is as follows:

In this as in every other criminal case, the accused is presumed innocent and cannot be found guilty unless the evidence is sufficient to prove his guilt beyond a reasonable doubt. While the burden is upon the State to establish every fact material to the guilt of the accused, including every circumstance that enters into the grade or degree of the crime charged, beyond a reasonable doubt, that does not mean that the State must prove an accused guilty to an absolute or mathematical certainty. What it does mean is that there must be such evidence as you would act upon in a

matter involving important affairs in your life or your business or with regard to your property. If the evidence is sufficient that you would act upon it in a very important matter in your own lives, then it is sufficient to convict in a criminal case.

The specific error alleged by appellant occurs in the last two sentences: the omission of the words "without reservation" (or "without hesitation") immediately following the word "act" in describing how certain one should be regarding the accused's guilt. According to appellant, the instruction as given leaves the incorrect impression that the State's burden of proof is something lower than beyond a reasonable doubt because, as pointed out by Judge McAuliffe in his concurring opinion in *Wills v. State*, 329 Md. 370, 389, 620 A.2d 295, 304 (1993), "Important decisions in one's life are often, and of necessity, made on a mere preponderance of the evidence." Appellant conceded before the post conviction court that no objection to this instruction was made at trial and that the issue might thereby be considered waived.[4] He responded, however, that *Wills*, decided subsequent to his conviction, announced a new, substantive, and retroactively applicable constitutional standard for reasonable doubt jury instructions, which precludes a finding of waiver by operation of § 645A(d) of the Post Conviction Procedure Act.

The post conviction court found no merit to appellant's substantive claim of error. Relying in part on *Collins v. State*, 318 Md. 269, 568 A.2d 1 (1990), in which the Court of Appeals upheld a similar jury instruction, the court found that the instruction taken as a whole adequately conveys the meaning of "reasonable doubt" to the jury. The court read *Wills* not as laying down a requirement for any particular phrases at all but as continuing the practice of reviewing the instructions as a whole, while noting a preference for the use of "without

---

**4.** Appellant has not asserted that his trial counsel was constitutionally deficient for failing to request the better instruction; we rejected that assertion under similar circumstances in *State v. Hunter*, 103 Md.App. 620, 623, 654 A.2d 886, 887–88 (1995).

reservation." Therefore, ruled the post conviction court, even applying *Wills* "retroactively," the instruction was adequate. As an alternate rationale, the court pointed out that failure to object at trial operated as a waiver and barred appellant from asserting this claim of error.

In his appeal to this Court, appellant maintains the post conviction court erred in finding the instruction to be adequate, as well as in considering *Collins* to still be good law in light of *Wills*. With regard to the waiver issue, he has abandoned his argument based on § 645A(d)[5] and instead claims that "this Court can still reverse for a deficient reasonable doubt instruction based on 'plain error' under Md. Rule 8–131. *See Walker v. State*, 343 Md. 629, [647–48,] 684 A.2d 429, 438 (1996)."

■■ The Maryland Post Conviction Procedure Act permits a wide range of collateral attacks upon convictions "provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction, or in any other proceeding that the petitioner has taken to secure relief from his conviction." Md. Ann.Code Art. 27, § 645A(a) (1957, 1996 Repl.Vol.). The statutory standards governing waivers are set forth in § 645A(c). Although that subsection on its face requires all waivers to be "knowing and intelligent," the Court of Appeals ruled in *Curtis v. State*, 284 Md. 132, 395 A.2d 464 (1978), that the General Assembly did not intend § 645A(c) to apply to waivers of all types of rights but only

---

**5.** While appellant's application for leave to appeal was pending before this Court, the Court of Appeals foreclosed his § 645A(d) argument in *Hunt v. State*, 345 Md. 122, 691 A.2d 1255 (1997). The facts of that case bear a remarkable similarity to those now before us. Hunt filed a claim for post conviction relief based on a reasonable doubt jury instruction, allegedly deficient for omitting the words "without reservation" (or "without hesitation"). He failed to object to the instruction during his 1986 trial, but he argued that § 645A(d) precluded a finding of waiver due to the fact that the intervening *Wills* case had laid down a new constitutional standard. The Court of Appeals held, "[O]ur decision in *Wills* did not alter existing case law with respect to the criteria under which a challenge to a reasonable doubt instruction is to be presented. Consequently, [Hunt's] Art. 27, § 645A(d) argument is unavailing." *Id.* at 152, 691 A.2d at 1269.

those rights which, under *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and similar holdings, can only be waived by a knowing, voluntary, and intelligent relinquishment by the defendant himself of a known right. 284 Md. at 149, 395 A.2d at 474. Waivers of other rights that ordinarily do not require such knowing and voluntary action for a waiver to be effective are not governed by subsection (c). *Id.* We often employ the terms "fundamental right" and "nonfundamental right" in discussing this distinction, while remaining mindful that the terms are used in this context as mere shorthand. *See State v. Rose,* 345 Md. 238, 248, 691 A.2d 1314, 1319 (1997).

 As the Court of Appeals reconfirmed just last year, the right to a correct jury instruction, even a jury instruction on the definition of reasonable doubt, is not a fundamental right subject to § 645A(c) and may be waived for post conviction purposes by a failure to object at trial. *Rose,* 345 Md. at 250, 691 A.2d at 1320. Appellant concedes his failure to object to the allegedly erroneous jury instruction at trial, and he therefore has waived his claim.

 We are called upon to employ our extraordinary power of plain error review in order to rescue appellant from his waiver. Precedent dictates, however, that plain error review is a creature of direct appellate review only and is not available in post conviction proceedings. *Prokopis v. State,* 49 Md.App. 531, 534, 433 A.2d 1191, 1193 (1981) (denying application for leave to appeal);[6] *see also Walker v. State,* 343 Md. 629, 635, 684 A.2d 429, 431–32 (1996).[7] Neither the Post

---

6. As *Prokopis* was a denial of the petitioner's application for leave to appeal, the Court of Appeals had no opportunity to review our ruling. Section 12–202(1) of the Courts and Judicial Proceedings title of the Maryland Code, which was in effect at the time of *Prokopis,* prohibits any grant of certiorari from a grant or denial of leave to appeal from a post conviction proceeding.

7. In the procedural history set down in *Walker,* the Court of Appeals noted that this Court, in an unreported opinion, had previously reversed a grant of post conviction relief to Walker on the grounds that the post

Conviction Procedure Act nor the Maryland Rules of Post Conviction Procedure contain any provision for plain error exceptions to waivers. Appellant invokes Maryland Rule 8–131 as the source of the rule (although perhaps Rule 4–325(e) is the stronger cite), but as the Court of Appeals noted in *Walker*, "Rules 4–325(e) and 8–131(a), authorizing a court to take cognizance of 'plain error' despite the waiver issue, literally apply only to direct appellate review of a judgment." 343 Md. at 647, 684 A.2d at 438. Appellant cannot use post conviction review in such a manner so as to secure a second round of direct appellate review. *See Kelly v. Warden, Maryland Penitentiary*, 243 Md. 717, 718, 222 A.2d 835, 836 (1966) ("The Post Conviction Procedure [Act] . . . is not a substitute for an appeal or a means of obtaining a belated appeal.").[8]

■■■■ While appellant's argument based on plain error fails, he has called our attention to a page in the *Walker* opinion where the Court of Appeals noted, "[T]his Court has taken the position that a court, in a post conviction proceeding, can *excuse* a waiver [of a non-fundamental right] based upon an earlier procedural default if the circumstances warrant such action." 343 Md. at 647–48, 684 A.2d at 438 (emphasis added). The Court itself noted the uncertain origin of this authority to excuse, since waivers of non-fundamental rights are not governed by the Act and since Maryland's rules of appellate procedure do not directly apply. *Id.* at 647, 684 A.2d at 438. Although Maryland courts have recognized the distinction between waivers of fundamental and non-fundamental rights since 1978, the first time the Court of Appeals ever spoke of

conviction court was without authority to invoke the plain error rule. There is no mention (nor any reported record) that Walker ever petitioned for certiorari from our ruling, so the Court of Appeals apparently never directly reviewed that opinion.

8. Moreover, appellant had his opportunity to argue plain error in his direct appeal from conviction. Although the record of his direct appeal is not at our disposal, our published opinion in *Cirincione* indicates we declined to exercise plain error review of three unidentified jury instructions. 75 Md.App. at 186, 504 A.2d at 1161. Therefore, depending on whether appellant previously appealed the same instruction before us now, plain error review itself has been either finally litigated or waived.

such an excusal was in *Oken v. State*, 343 Md. 256, 273–74, 681 A.2d 30, 38 (1996), when it claimed such discretion under Rule 8–131. Prior to that time, a finding of waiver had always been dispositive, and the Court of Appeals had gone so far as to hold that a waived claim was "not . . . a proper subject for review in [a post conviction] proceeding." *Trimble v. State*, 321 Md. 248, 257, 582 A.2d 794, 798 (1990). The *Walker* Court premised its discretion to excuse on *Oken* but also indicated some measure of reliance on *Foster v. State*, 305 Md. 306, 503 A.2d 1326 (1986), which was not a post conviction case. More recently, in *Hunt v. State*, 345 Md. 122, 152, 691 A.2d 1255, 1269 (1997), discretion to excuse was again based squarely on Rule 8–131. *But see State v. Rose*, 345 Md. 238, 250, 691 A.2d 1314, 1320 (1997) (reversing this Court's grant of post conviction relief and remanding with instructions to affirm the circuit court's denial without allowing for this Court to consider whether to excuse the petitioner's waiver).

Since discretion to excuse apparently exists, the question arises of what standards shall govern the exercise of that discretion. The question is not made any easier by the unclear source of this discretion. There has yet to be a reported case in which an appellate court of Maryland has actually exercised this discretion and excused a waiver of a non-fundamental right on post conviction review, which may itself be telling. We can find only two pronouncements bearing directly on this issue, both of which may arguably be dicta. In *Curtis*, the Court of Appeals said that post conviction waiver of non-fundamental rights is "to be governed by case law or any pertinent statutes or rules." 284 Md. at 149–50, 395 A.2d at 474. This Court has also commented that "general legal principles" of waiver apply to non-fundamental rights on post conviction review. *State v. Torres*, 86 Md.App. 560, 568, 587 A.2d 582, 586 (1991). These broad statements do not provide much practical guidance, and they appear to import into the post conviction realm without discrimination concepts of waiver developed for direct appellate review.

We find the Post Conviction Procedure Act instructive here as the "pertinent statute," in spite of the fact that it is not

directly applicable to waivers of non-fundamental rights. Under the Act, if a petitioner asserts a claim of error pertaining to a fundamental right but he has waived this claim of error, he must show "special circumstances" if he is to avoid the statutory preclusive effect of his waiver. Md.Ann. Code Art. 27, § 645A(c)(1). If he must show "special circumstances" to reach the issue of whether his fundamental rights were violated, it would be anomalous if he were not required to make at least the same showing in order to excuse his waiver of a non-fundamental right. In other words, unless a post conviction court requires a showing of at least "special circumstances" to excuse a waiver of a non-fundamental right, such a court could excuse waivers of non-fundamental rights more readily and on a lesser showing than waivers of fundamental rights. Since we cannot see any rationality in a system of review that affords a higher level of protection to those rights of comparatively lesser importance, we therefore decide that before a post conviction court excuses a waiver of a non-fundamental right, the petitioner must at least make the same showing of "special circumstances" that is required under § 645A(c). We of course recall that the terms "fundamental" and "non-fundamental" are only used as shorthand for whether the waiver of the right must be knowing and intelligent, but the terms do at least reflect the relative importance of the rights involved.

 Furthermore, as petitioner here challenges a jury instruction, we employ a similar line of reasoning and hold that in order for this Court to excuse his waiver he must at least make the same showing as would be required to invoke the plain error doctrine. If we did not hold petitioner to this additional standard at a minimum, we would be applying a post conviction review standard less stringent than that which is applied on direct appeal. Such a result would also be anomalous, as it would render post conviction relief more availing than direct appellate relief whenever jury instruction claims are waived. We will therefore additionally apply the standards of the plain error rule at a minimum in deciding whether to excuse appellant's jury instruction waiver.

Although we have derived these two rules (no less than "special circumstances" and, in the case of jury instructions, no less than plain error) without reference to the practices of the Court of Appeals, we find that the practices of the Court of Appeals in this arena are accurately described by reference to these two rules. In each of the three instances in which the Court of Appeals has considered excusing a waiver of a non-fundamental right on post conviction review, the Court's reasons for not excusing the waiver can be read as an application of one of the aforementioned rules. In *Oken*, the petitioner had objected to the sufficiency of the jury voir dire, but he failed to raise that issue on his direct appeal. He argued for excusal contending that a controlling Supreme Court opinion was not decided until too late in the course of his appeal to take it into account. The Court of Appeals determined that its own cases established precisely the same point well prior to the appeal, and thus found "no circumstances excusing the failure to raise the issue on direct appeal." 343 Md. at 273–74, 681 A.2d at 38. This reasoning and result are in accord with applying the minimum requirement of "special circumstances" to this waiver of a non-fundamental right. In *Walker*, the petitioner challenged a jury instruction on intent that had not been challenged at trial, on appeal, on certiorari petition, or in his first two post conviction petitions. The Court compared the circumstances of the case to those of *Franklin v. State*, 319 Md. 116, 571 A.2d 1208 (1990), in which the Court found plain error in an instruction "essentially the same as the instruction given at Walker's trial." 343 Md. at 648, 684 A.2d at 438. Since intent was a contested issue under the facts of *Franklin*, but not in Walker's trial, the Court ruled that the "circumstances" of the two trials were "totally different" and that the "error in the jury instruction concerning intent clearly did not deprive Walker of a fair trial." *Id.* at 650, 684 A.2d at 439. Although the Court spoke in terms of "circumstances," it apparently declined to excuse the waiver of this jury instruction claim based solely on the fact that Walker had not met the standards of plain error review. Finally, in *Hunt*, the petitioner failed to challenge his jury instruction on rea-

sonable doubt at trial, on two rounds of direct appeal, or in a prior petition for post conviction relief. His only argument in favor of excusing the waiver was that the intervening case of *Wills v. State,* 329 Md. 370, 620 A.2d 295 (1993), had imposed a new rule he could not have known about at trial. Even assuming the correctness of his reading of *Wills,* however, the Court pointed out that *Wills* was decided prior to Hunt's first petition for post conviction relief and that "Hunt has not directed us to a reason why he did not bring that decision to the circuit court's attention in a timely fashion." *Hunt,* 345 Md. at 152, 691 A.2d at 1269. This may be read as indicating that Hunt's arguments for excusing his jury instruction waiver failed for want of any special circumstances, without reaching the standards of the plain error rule.

Turning to appellant's claim of error in his jury instruction on reasonable doubt, we find there are no special circumstances present to warrant excusing the waiver. The only argument appellant presents is that he could not have known to object at trial since the "new legal standard" set forth in *Wills* was not announced until almost six years after his trial. The Court of Appeals, however, has squarely rejected the premise that *Wills* altered the existing legal standards. *Hunt,* 345 Md. at 152, 691 A.2d at 1269; *see supra* note 5. Since this argument is without merit and no other special circumstances are alleged, the waiver is not excused. We do not reach the jury instruction issue.

In sum, we find no error in the lower court's denial of post conviction relief. We have found no merit to appellant's numerous claims based on his right to effective assistance of counsel, and appellant has waived any claim he may have had that the jury instructions were constitutionally deficient. The denial of the petition is thereby affirmed.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**