691 A.2d 802

Tremaine CONYERS

v.

STATE of Maryland

No. 1156, Sept. Term, 1996.

Court of Special Appeals of Maryland.

April 2, 1997.

Harry Levy (Kenneth W. Ravenell, Lawrence M. Hettleman, and Schulman, Treem, Kaminkow & Gilden, P.A., on the brief), Baltimore, for appellant.

Emmet Davitt, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Patricia Jessamy, State's Attorney of Baltimore City, on the brief), Baltimore, for appellee.

Argued before MOYLAN, WENNER and HOLLANDER, JJ.

MOYLAN, Judge.

This appeal is an occasion for a stroll down Memory Lane. The appellant, Tremaine Conyers, was convicted by a Baltimore City jury, presided over by Judge Kenneth L. Johnson, of attempted murder, armed robbery, and other related offenses. The only contested issue at trial was the identification of the appellant as the criminal agent. That contest, in turn, has given rise to the two appellate contentions:

1. that Judge Johnson erroneously failed to suppress an extrajudicial photographic identification of the appellant by Ms. Trineka English; and

2. that Judge Johnson erroneously permitted an in-court identification of the appellant by Adam Harding.

During the early morning hours of July 20, 1995, Adam Harding, Trineka English, and Otis Taylor were standing on the corner of Lafayette Street and Myrtle Avenue in Baltimore City. They were approached by two individuals whom Harding knew as "Juice" and "Black." The two men initially asked to speak to Harding. At some point thereafter, "Juice" suddenly and unexpectedly grabbed Harding around the neck, placing him in a headlock. While "Juice" held Harding, "Black" pointed a gun at Harding's head and demanded his

keys and wallet. After complying with "Black's" demands, Harding was dragged into a nearby alley by both assailants. He was then shot in the head by "Black." Harding, although severely injured, survived. At trial, both Harding and Ms. English identified the appellant as the individual whom they knew by the name of "Black."

■ With respect to Ms. English, the appellant moved, pretrial, to have her extrajudicial photographic identification of him suppressed on the ground that the identification procedure had been impermissibly suggestive. Had the appellant prevailed, any subsequent in-court identification of him by Ms. English would have been presumed to have been the tainted fruit of the poisoned tree and would, therefore, have been inadmissible, unless the State could show an independent source for the identification.

In raising this first contention, the appellant invokes a body of Supreme Court law, dealing with taint hearings for allegedly unconstitutional extrajudicial identifications, that flourished luxuriantly for the decade 1967–1977 but has since then largely withered on the vine. It was a short spurt of furious constitutional litigation that began in the activistic heyday of the Warren Court and essentially ended as the neo-conservative "Burger–Nixon Court" came of age.

The decade began with a roar with the much heralded *Wade–Gilbert–Stovall* trilogy—*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Identification procedures, which had theretofore been treated as a purely factual matter left largely for lay jurors to handle, for the first time took on constitutional dimensions. The catalyst for the constitutionalization of identification procedures was the determination that a police lineup was deemed to be a "critical stage," thereby entitling an accused who was forced to stand in a lineup to the Sixth Amendment right to the assistance of counsel.

The apparent significance of that right to counsel was soon diminished, as a practical matter, as subsequent cases pointed out some crippling doctrinal limits on the right. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), made it clear that there is no Sixth Amendment right to counsel at a lineup, notwithstanding the fact that it may be a critical stage, for one who has not yet been indicted or who has not otherwise qualified as an "accused" within the contemplation of the Sixth Amendment. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), dealt with the converse limitation that even for an "accused," there is no right to the assistance of counsel to monitor a photographic identification, for instance, because such a procedure is not a "critical stage." One must first be an "accused" and then be placed at a "critical stage" to qualify. Neither situation alone will suffice.

In short order, the police adjusted their identification procedures so as to avoid almost entirely any Sixth Amendment problems. They either 1) used some identification modality, such as a photographic array, that was not a critical stage, instead of a live police lineup or 2) made sure that a police lineup was used only for a suspect who was not yet an "accused."

As the Sixth Amendment aspect of the new constitutional phenomenon dramatically waned within the first half decade, the Supreme Court did point out that there remained a residual Fourteenth Amendment reliability issue even for some of those who did not enjoy a Sixth Amendment right to counsel. *Stovall v. Denno* established that a pretrial identification procedure could violate the Due Process Clause of the Fourteenth Amendment if it were impermissibly (unnecessarily) suggestive. It is not enough for exclusionary purposes, however, that the procedure be suggestive if the police have no choice in the matter. It is required that the procedure be not only 1) suggestive but also 2) impermissibly so.

The due process criterion was more fully fleshed out in *Simmons v. United States* and reached full flower in *Neil v.*

*Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The final definition for an excludable pretrial identification became "one that was so [1] impermissibly [2] suggestive [3] as to give rise to a very substantial likelihood of irreparable misidentification." The third requirement massively curtailed the applicability of the first two and effectively returned identification law to where it had been before the *Wade–Gilbert–Stovall* trilogy enjoyed its brief moment in the sun.

With *Manson v. Brathwaite* in 1977, the constitutional phase of identification law had largely run its course. The Supreme Court pointed out that

> inflexible rules of exclusion, that may frustrate rather than promote justice, have not been viewed recently by this Court with unlimited enthusiasm.

432 U.S. at 113, 97 S.Ct. at 2252. Except in extreme cases, the Supreme Court was content to let the trustworthiness of an identification be left to a commonsense weighing process by lay jurors:

> Surely, we cannot say that under all the circumstances of this case there is "a very substantial likelihood of irreparable misidentification." Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

432 U.S. at 116, 97 S.Ct. at 2254 (citation omitted).

What, then, is the legacy of the *Wade–Gilbert–Stovall* era? Because there has been almost no activity in this area for the last twenty years, younger practitioners are susceptible to reliance on bits and pieces out of an anachronistic, albeit not repudiated, case law and to taking bits and pieces out of context, without the larger perspective of what the big picture

looked like and how it shone brilliantly for a season and then largely faded. The present contention is a case in point.

We sense preliminarily, but only in our peripheral vision, that the appellant *might have had*, if the State had pushed it, a preservation problem. At the suppression hearing, he argued one basis for his proposition that the pretrial photographic identification was impermissibly suggestive and on appeal he argued quite another. It *might* well be, therefore, that what he now argues has not been preserved and, conversely, that what has been preserved is not now argued. Because we feel that a consideration of the merits permits us to make a point that needs to be made, however, we will not *sua sponte* pursue the preservation question.

At the conclusion of the pretrial suppression hearing, Judge Johnson ruled that the photographic identification procedure was not impermissibly suggestive. We affirm that eminently correct ruling. The testimony at the suppression hearing showed that Ms. English had been shown two photo array cards. Each photo array card contained six photographs and Ms. English was asked, "Do you see anyone who looks familiar in these pictures?" Ms. English pointed to the appellant's photograph and stated that he looked familiar. Detective Mitchell asked further what she meant by the phrase "he looks familiar." Ms. English stated that "he looks like the other guy." Detective Mitchell testified at the suppression hearing:

> And then I said, the second guy who was with Juice? She said yes. I asked her, are you sure it's him? And this whole thing took about 15 seconds. And she stated, I'm sure. And then as I'm writing this, she wrote, I never forget a face.

Ms. English testified at the suppression hearing that no one ever suggested to her which photograph to pick and that the photograph she ultimately picked was that of the appellant. Judge Johnson, in light of the absence of any evidence to support the appellant's contention that the police detective

impermissibly suggested to Ms. English which photograph to select, ruled that the extrajudicial identification was untainted.

It is presumably the propriety of that ruling at the suppression hearing that the appellant now raises before us, although his procedural focus is by no means clearly differentiated. Assuming that to be the case, we will look to the argument he made at the suppression hearing. That argument was based on the five criteria for assessing reliability that were developed in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Those were criteria for testing whether an impermissibly suggestive extrajudicial identification was thereby one giving rise to "a very substantial likelihood of irreparable misidentification" or whether it was essentially reliable, notwithstanding the impermissible suggestiveness.

That entire issue of reliability was never put forth by the Supreme Court as an additional ground for excluding an extrajudicial identification. It was, by diametric contrast, a severe limitation on such exclusion. *Simmons, Biggers,* and *Manson v. Brathwaite* unequivocally established that not all impermissibly suggestive procedures call for exclusion, but only those impermissibly suggestive procedures that would actually give rise to a very substantial likelihood of irreparable misidentification. Until a defendant establishes impermissive suggestiveness in the first instance as a basis for presumptive exclusion, therefore, a court does not even inquire, by looking at the suggested reliability factors, into whether the State is entitled to an exemption from that presumptive exclusion. The reliability inquiry, in short, is not an additional ground for exclusion but is, rather, a limitation on exclusion. The appellant's argument was simply not on point. He never reached the stage where reliability even became material.

Before us, the appellant takes a different tack. He argues that Ms. English was pressured or prodded into making her extrajudicial identification and that such police pressure amounted to impermissible suggestiveness. He argues that

Ms. English "made her identification under suggestive conditions, in light of the fact that she stood accused of being criminally involved in the incident at the time she was shown the photo arrays." He refers to the fact that "she was forcefully brought into the police station by Detective Mitchell." He claims that she "made her identification under the shadow of police accusations that she was personally involved in the shooting and robbery."

Once again, the argument is not on point. The appellant points to no police conduct that "tipped off" Ms. English as to which photograph was the photograph of the assailant. Impermissibly suggestive police misbehavior, even assuming it to have been the case, which we do not, is not a category that embraces every variety of police misbehavior. We offer an extreme hypothetical simply to make the point. Even if it were to be assumed that the police dragged a witness screaming into the police station, rudely shoved her down in front of a "mug" book containing a thousand photographs, and threatened her that if she did not pick out one of them within the hour they would shoot her on the spot, such behavior would no doubt be improper. It would not, however, be impermissibly suggestive. To do something impermissibly suggestive is not to pressure or to browbeat a witness to make an identification but only to feed the witness clues as to which identification to make. THE SIN IS TO CONTAMINATE THE TEST BY SLIPPING THE ANSWER TO THE TESTEE. All other improprieties are beside the point. There is no place in the appellate syllogism for undifferentiated angst. The appellant does not even make an argument that the police abetted Ms. English in playing with "a marked deck."

█ The appellant's second contention concerns the in-court identification made of him by Adam Harding, the shooting victim. As a result of the shooting, Adam Harding was left legally blind, although he retained some residual sight. The appellant never moved for any pretrial suppression hearing with respect to any extrajudicial identification made by Adam Harding that might arguably have tainted a subsequent in-

court identification. Whatever may or may not have happened pretrial, therefore, is not in issue. The appellant's only express objection was to the identification of him made by Adam Harding at trial.

The appellant begins his argument with a false analogy. He flatly asserts:

> The same rules that apply to overly suggestive pretrial identifications must, for the protection of a defendant's due process rights, apply to overly suggestive in-court identifications.

■ The only problem with that bald assertion is that it is not true. The entire body of law developed by the Supreme Court in that furiously active decade of 1967–1977 deals with extrajudicial identifications and taint hearings. It had and it has nothing to do with identifications made in court. The conduct of the trial, including identifications made at trial, is left to the discretion of the trial judge. *McKnight v. State*, 33 Md.App. 280, 286, 364 A.2d 116 (1976); *Alston v. State*, 11 Md.App. 624, 629–30, 276 A.2d 225 (1971).

On the witness stand, Adam Harding was asked if he could see the appellant, who was seated at the trial table. Because of his near-blindness, he could not. At the State's request, Adam Harding was permitted to alight from the witness chair and to walk over close to where the appellant was seated. When he had gotten close enough to make out the appellant's features, he identified him both as the assailant and as a man he had known even prior to the assault.

To permit an extremely nearsighted (nay, a legally blind) witness to move closer to the person to be identified is functionally no different than to permit a witness with better vision to identify from the witness chair a defendant seated at trial table. In any event, it is quintessentially a matter left to the discretion of the trial judge. The appellant never requested that any more taxing or challenging identification procedure be employed in the courtroom. There was simply no abuse of discretion on the part of Judge Johnson.

The appellant says, however, that the in-court identification was suggestive. Even to use the word "suggestive" to condemn such a procedure is to import the specialized jargon of extrajudicial identification law into a legal region where it is not spoken. Any in-court identification of a defendant seated at the trial table is, by its very nature, in a layman's sense of the word, "suggestive." It is self-evidently so, and all parties know it and always have known it. It is nevertheless the standard procedure that is almost always routinely followed. Whatever its suggestiveness, it is done in full view of the jury which is able to weigh it for what it is. Counsel, moreover, is freely permitted to argue such weight or lack thereof to the jury. An in-court identification is not something that invokes, as a matter of law, any exclusionary principle.

*JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.*