806 A.2d 370

**Fortunato J. MENDES**

**v.**

**STATE of Maryland.**

**No. 1004, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 3, 2002.

Fred Warren Bennett (Booth M. Ripke and Bennett & Nathans, LLP on the brief), Greenbelt, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Argued before SALMON, DEBORAH S. EYLER and RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned), JJ.

RAYMOND G. THIEME, Jr., Judge, Ret'd, Specially Assigned.

In this appeal, we are asked to determine whether the Circuit Court for Anne Arundel County (Heller, J.) erred by denying post-conviction relief to Fortunato J. Mendes, the appellant, on the ground that his trial counsel was ineffective.

Appellant was convicted by a jury on September 1, 1989, of first degree murder and use of a handgun in the commission of a crime of violence. He is currently serving concurrent prison sentences of life without the possibility of parole for the murder conviction and 15 years for the handgun conviction. An earlier, direct appeal to this Court was unsuccessful.[1]

On April 21, 1997, appellant petitioned the circuit court for post-conviction relief.[2] After a six-day hearing, the court denied relief. Appellant applied for leave to appeal to this Court, and we granted the application on June 20, 2001.

---

1. *See Mendes v. State,* No. 1968, September Term, 1989, 84 Md.App. 765 (filed October 5, 1990) (*per curiam*).

2. *See* Md.Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), §§ 645A–J of Art. 27 (Maryland's Uniform Post Conviction Procedure Act).

**28**

## QUESTIONS PRESENTED

Appellant now presents the following questions:

I. Whether the post-conviction court erred in concluding that [a]ppellant's trial counsel did not provide constitutionally ineffective assistance at the suppression hearing.

II. Whether the post-conviction court erred in concluding that [a]ppellant's trial counsel did not provide constitutionally ineffective assistance by failing to call an essential defense witness....

III. Whether the post-conviction court erred in concluding that [a]ppellant's trial counsel did not provide constitutionally ineffective assistance in failing to properly investigate an alibi witness before presenting the witness to the jury.

IV. Whether the post-conviction court erred in concluding that [a]ppellant's trial counsel did not provide constitutionally ineffective assistance in regard to [a]ppellant's appearance before the jury in leg irons, shackles, and chains.

V. Whether the post-conviction court erred in concluding that the cumulative effect of all the errors by [a]ppellant's trial counsel did not collectively prejudice [a]ppellant sufficient[ly] to deny him constitutionally effective assistance.

We answer all five questions in the negative and affirm the judgment of the post-conviction court.

## FACTS

On June 15, 1988, appellant was a practicing attorney in Washington, D.C. He was also scheduled to go on trial the next day, June 16, 1988, for distribution of cocaine. The victim, Davide Diggs,[3] was to have been a witness against him.

---

3. Two different spellings of the victim's first name appear in the record. Throughout the trial transcript, the victim is referred to as "Davide

A gunman ambushed Diggs on the morning of June 15, 1988, as Diggs left his home in the Oyster Harbor area of Anne Arundel County to go to work. The gunman chased Diggs a short distance, then shot him three times in the back and once in the arm.

Diggs's mother, Madeline Stokes, heard Diggs shout, "Oh, no," and then heard shots. Stokes looked out the window in time to see a man chasing her son across the yard. Stokes only saw the man from behind.

Stokes ran outside to her son, noticing that the assailant was gone. Stokes asked Diggs who had shot him, and Diggs replied "the lawyer." Stokes asked Diggs if he meant "Fortunato, the lawyer," and he answered "yes." With varying degrees of certainty, five other witnesses identified appellant as someone they had seen at or near the scene of the shooting.

## STANDARD OF REVIEW

It is well established that the right to counsel guaranteed by the Sixth Amendment to the United States Constitution, and made applicable to the states through the Due Process Clause of the Fourteenth Amendment, encompasses " 'the right to the *effective* assistance of counsel.' " *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citations omitted; emphasis added). *See also Redman v. State,* 363 Md. 298, 309–10, 768 A.2d 656, *cert. denied,* —— U.S. ——, 122 S.Ct. 140, 151 L.Ed.2d 92 (2001); *Oken v. State,* 343 Md. 256, 283–84, 681 A.2d 30 (1996); *State v. Jones,* 138 Md.App. 178, 204–05, 771 A.2d 407, *cert. granted,* 365 Md. 266, 778 A.2d 382 (2001); *Cirincione v. State,* 119 Md.App. 471, 484, 705 A.2d 96 (1998). "The benchmark for judging any claim of ineffective assistance must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

---

Diggs," but in the transcript of the post-conviction proceedings the name is spelled "David Diggs." For the sake of consistency, we shall use the former spelling throughout this opinion.

In *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, the Supreme Court established a two-pronged test for determining whether counsel's assistance was so defective as to require reversal.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

"Maryland has consistently applied the *Strickland* test in deciding whether counsel has rendered constitutionally ineffective assistance." *Jones,* 138 Md.App. at 205, 771 A.2d 407. *See also Johnson v. State,* 142 Md.App. 172, 788 A.2d 678 (2002). As this Court has summarized:

To establish that trial counsel's representation "was so deficient as to undermine the adversarial process," ... a defendant must show that: (1) under the circumstances, counsel's acts resulted from unreasonable professional judgment, meaning that "counsel's representation fell below an objective standard of reasonableness," *and* (2) that the defendant was prejudiced, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Jones,* 138 Md.App. at 206, 771 A.2d 407 (citations omitted; emphasis in original). "To establish the requisite degree of prejudice in Maryland, the defendant must demonstrate a 'substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 207–08, 771 A.2d 407 (citation omitted). "[A] ' "proper analysis of prejudice" ' includes consideration of ' "whether the result ... was fundamentally unfair or unreliable." ' " *Id.* at 208, 771 A.2d 407 (citations omitted).

"Ineffectiveness is not a question of 'basic, primary, or historical fac[t]'.... Rather, ... it is a mixed question of law and fact." *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052 (citations omitted). In reviewing a decision regarding a claim of ineffective assistance of counsel, an appellate court "will not disturb the factual findings of the post-conviction court unless they are clearly erroneous." *Wilson v. State*, 363 Md. 333, 348, 768 A.2d 675 (2001).

But, a reviewing court must make an independent analysis to determine the "ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed." ... In other words, the appellate court must exercise its own independent judgment as to the reasonableness of counsel's conduct and the prejudice, if any.... "Within the *Strickland* framework, we will evaluate anew the findings of the lower court as to the reasonableness of conduct and the prejudice suffered.... As a question of whether a constitutional right has been violated, we make our own independent analysis by reviewing the law and applying it to the facts of the case."

*Jones*, 138 Md.App. at 209, 771 A.2d 407 (citations omitted). Like the post-conviction court, we keep in mind that, "[w]ith the benefit of hindsight, ... it is all too easy to mistake a sound but unsuccessful strategy for incompetency...." *Cirincione*, 119 Md.App. at 485, 705 A.2d 96. "[F]or this reason, we 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (citation omitted). "Furthermore, our review of the *Strickland* elements of ineffective assistance need not be taken up in any particular order. In other words, we need not find deficiency of counsel in order to dispose of a claim on the grounds of a lack of prejudice." *Id.* at 485–86, 705 A.2d 96.

## DISCUSSION

### I

### Motion to Suppress

One day after the shooting, Detective Dirk Rinehart of the Anne Arundel County Police Department prepared a photo

array ("the first array") depicting six persons, which he showed to several witnesses. This first array, comprised of black and white frontal and profile shots of each of the six persons, included year-old photos of appellant that the detective had obtained from another police department. Following appellant's arrest, Detective Rinehart took a new photo of appellant and included it in a second photo array ("the second array"), which was comprised of color, frontal shots of six persons. The second array was shown to various witnesses as well.[4]

Prior to trial, appellant moved to suppress evidence that several witnesses had selected appellant's photo from one or both of the arrays as someone they had seen at or near the crime scene. A hearing was held, and defense counsel argued that the identification procedure was suggestive in that: only six photos were used in each array; the complexions and ages of the persons in the arrays were dissimilar; the photo of appellant used in the first array was printed on newer paper than the other photos; the photo of appellant used in the second array had been published previously in a local newspaper and had been seen by at least some of the witnesses; and the photo of appellant used in the second array was "more distinctive" in color than the other photos. The court denied the motion.

In petitioning for post-conviction relief, appellant posited that the police had shown both photo arrays to four of five witnesses whose trial testimony, with varying degrees of certainty, placed appellant at the crime scene. Appellant contended that his trial counsel's assistance was ineffective in that counsel failed to argue that the identification procedure was suggestive or impermissibly suggestive in that (1) appellant was the only person depicted in both photo arrays, and (2) several witnesses saw only partial views of the suspect, and all the photos in the arrays "did not match the views the wit-

---

4. Neither photo array was offered into evidence at the post-conviction hearing. The post-conviction court relied, and this Court must rely, entirely on testimonial descriptions of the photos in the arrays.

ness[es] allegedly had." Appellant further argued that counsel was ineffective in failing to argue that the identifications made by the witnesses were unreliable.

The post-conviction court rejected appellant's arguments. The court concluded in a "Memorandum Opinion and Order" that the additional arguments as to suggestiveness "would not have altered the trial court's determination that the photo array was not impermissibly suggestive." It explained that,

in the spectrum of the totality of the circumstances, the trial court expressed no hesitation with regard to the suppression issue, so that even with the additional arguments postured by Petitioner the trial court would, at most, have moved in the direction of suppression, but not enough to suppress the photo array.

As to defense counsel's failure to argue that the identifications were unreliable, the court stated:

Although Petitioner correctly contends that trial counsel failed to argue that the State's witnesses were unreliable thereby foreclosing the court's ability to suppress the photo array, this error did not affect the court's decision. The trial court found that "... with regard to the photos, I mean, there is nothing suggestive about those photos." ... With regard to the trial court's ruling that there was no impermissible suggestiveness the further issue regarding the reliability of the witnesses is moot. The reliability issue is only reached if the court finds an impermissible suggestiveness in the photo array and the burden then switches to the State to show that the reliability of the witnesses overcomes this suggestiveness....

Therefore, the Court does not find that trial counsel was ineffective by failing to argue the reliability issue because the photo array would not have been suppressed irrespective of this argument....

Appellant now contends that, in reaching this conclusion, the post-conviction court "fail[ed] to properly apply controlling law in Maryland."

### —Admissibility of Suggestive Pre-trial Identifications—

■ There is no dispute that the Due Process Clause of the Fourteenth Amendment may, under certain circumstances, compel the exclusion of a pre-trial identification obtained by police. In *Webster v. State,* 299 Md. 581, 600, 474 A.2d 1305 (1984), in which two appellate challenges to police line-ups were consolidated, the Court of Appeals analyzed, *inter alia,* four Supreme Court decisions that dealt with judicial or extra-judicial identification procedures: *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Court of Appeals summarized:

The [Supreme] Court now recognizes four degrees of "taint" on due process grounds with respect to an extra-judicial corporeal confrontation. The confrontation may be:

(1) Suggestive, but permissibly so . . . . [5]

(2) Impermissibly (unnecessarily) suggestive . . . .

(3) So impermissibly suggestive as to give rise to a very substantial likelihood of misidentification . . . .

(4) So impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification . . . .

(Citations omitted.) The *Webster* Court affirmed determinations by the trial courts that the line-ups in question were not in any way suggestive. *See id.* at 613, 620, 474 A.2d 1305. The Court of Appeals nevertheless went on to explain in *dicta:*

With respect to a confrontation tainted to

---

5. For example, in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), an identification procedure by which the police took a murder suspect to the hospital room of the one surviving victim of the attack was determined to be suggestive but not unnecessarily so. The Supreme Court explained that "no one knew how long [the surviving victim] might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and the knowledge that [the victim] could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room." *Id.* at 302, 87 S.Ct. 1967 (citation omitted).

(1) *the fourth degree* (so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification):

(a) judicial and extra-judicial identifications are *per se* to be excluded....

(2) *the third degree* (so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification):

(a) extra-judicial identification to be *per se* excluded....

(b) judicial identification is admissible if "reliable." ...

(3) *The second degree* (impermissibly suggestive) and *the first degree* (suggestive, but permissibly so):

(a) judicial and extra-judicial identifications are admissible if "reliable." ...

*Id.* at 601, 474 A.2d 1305 (citations omitted).

Appellant maintains that, if trial counsel had made the additional arguments regarding suggestiveness, "the trial court would have found—at the least—that [the] photo identification techniques were 'permissibly suggestive,' and likely would have found 'impermissible suggestiveness.'" Based on *Webster*, appellant asserts that even a finding that an identification procedure was suggestive, but permissibly so, is "sufficient to trigger the reliability prong of the two-part test...."

We are not convinced that the particular language in *Webster* on which appellant relies, to the effect that an extra-judicial identification that is permissibly suggestive is admissible only if reliable, reflects the current view of the Court of Appeals. While the Court has not expressly modified the language, it has implicitly suggested that the reliability of an extra-judicial identification procedure is not placed in issue unless the procedure was impermissibly or unnecessarily suggestive. In *Jones v. State*, 310 Md. 569, 577, 530 A.2d 743 (1987), *vacated and remanded on other grounds*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988), the Court seemed to use the terms "suggestive" and "impermissibly suggestive" interchangeably. The Court explained:

In *Webster*, we reviewed the law pertaining to suggestive pretrial identifications, noting that the cases establish a two-stage inquiry for due process challenges to extrajudicial identifications.... The first question is whether the identification procedure was *impermissibly suggestive.* ... If the out-of-court identification was not made under *suggestive* circumstances, the due process inquiry ends: both judicial and extrajudicial identification evidence is admissible....

If, on the other hand, the identification was *tainted by suggestiveness* the inquiry progresses to the second stage.

*Jones*, 310 Md. at 577, 530 A.2d 743 (emphasis added).

In *Evans v. State*, 304 Md. 487, 499 A.2d 1261(1985), the Court reviewed a contention that an in-court identification was tainted by an improper pre-trial identification that involved the display of a single photograph. The Court summarized the principles established by *Manson, Biggers, Simmons,* and *Stovall,* as analyzed in *Webster,* and stated:

The initial determination to be made is whether the identification procedure was *impermissibly suggestive.* It is clear in this case that it was. The showing of a single photograph, under the circumstances shown by this record, was suggestive, and the State does not seriously argue to the contrary. There were no exigent circumstances justifying the presentation of a single photograph rather than an appropriate array.

*Therefore, we next consider whether, under the totality of the circumstances, the identification was reliable.* ...

*Evans*, 304 Md. at 498, 499 A.2d 1261 (emphasis added).

Like the Court of Appeals in *Jones* and *Evans*, this Court has explained that a determination as to the reliability of an extra-judicial identification need only be made if the identification is found to be impermissibly or unnecessarily suggestive. In *Thomas v. State*, 139 Md.App. 188, 208, 775 A.2d 406 (2001), *aff'd*, 369 Md. 202, 798 A.2d 566 (2002), which involved a pre-trial identification from a single photo, we stated:

In determining the admissibility of an extrajudicial identification, such as a photo array, the defense has the initial

burden of showing "some unnecessary suggestiveness" in the procedures employed by police. If the defense meets the burden, then the State must prove, by clear and convincing evidence, the existence of reliability in the identification that outweighs the corrupting effect of the suggestive procedure.

In *McDuffie v. State,* 115 Md.App. 359, 366–67, 693 A.2d 360 (1997), which involved a pre-trial identification from a show-up, we explained:

In Maryland, a two-stage inquiry for challenging an out-of-court identification has been established. "The first question is whether the identification procedure was impermissibly suggestive," and 'suggestiveness' "exists where '[i]n effect. the police repeatedly said to the witness, '*This* is the man.'' " [*Jones,* 310 Md. at 577, 530 A.2d 743]. . . .

. . .

If we were to conclude the identification was "tainted by suggestiveness," it would become necessary for us to assess "whether, under the totality of the circumstances, the identification was reliable." [*Jones,* 310 Md. at 577, 530 A.2d 743]. . . .

(Emphasis in original.)

In *Conyers v. State,* 115 Md.App. 114, 117–18, 691 A.2d 802 (1997), which involved a pre-trial identification from two photo arrays, we quoted *Simmons,* 390 U.S. at 384, 88 S.Ct. 967, and summarized that "an excludable pretrial identification" is one that is " ' so [1] impermissibly [2] suggestive [3] as to give rise to a very substantial likelihood of irreparable misidentification.' " We explained: "Until a defendant establishes impermissive suggestiveness in the first instance as a basis for presumptive exclusion, . . . a court does not even inquire, by looking at the suggested reliability factors, into whether the State is entitled to an exemption from that presumptive exclusion." *Conyers,* 115 Md.App. at 120, 691 A.2d 802. *See also Graves v. State,* 94 Md.App. 649, 681, 619 A.2d 123 (1993) (holding that the trial court properly admitted evidence of a

pre-trial identification from a photo array, and stating that "it is well-settled that the 'defense has the initial burden of showing some unnecessary suggestiveness in the procedures employed by police,' and that '[i]f and when a *prima facie* taint is evident, the State must prove by clear and convincing evidence the existence of reliability in the identification that outweighs the corrupting effect of the suggestive procedure' " (citation omitted)); *rev'd on other grounds,* 334 Md. 30, 637 A.2d 1197 (1994); *Loud v. State,* 63 Md.App. 702, 706, 493 A.2d 1092 (1985) (espousing identical principles in holding that pre-trial identification from photo array and line-up was admissible). *Cf. Hopkins v. State,* 352 Md. 146, 160–61, 721 A.2d 231 (1998) (applying the two-pronged test where the challenge was to the relevancy of an identification by voice exemplar, and explaining that the first prong is whether the identification procedure was tainted by impermissible or undue suggestiveness, and the second prong is whether the identification was nevertheless reliable).

The two-pronged test applied by the Court of Appeals in *Jones* and *Evans* and applied consistently by this Court to determine the admissibility of an extra-judicial identification is in accord with the test applied by courts in various other jurisdictions. In *United States v. Maguire,* 918 F.2d 254, 263 (1st Cir.1990), the United States Court of Appeals for the First Circuit stated:

> In *Simmons* [390 U.S. 377, 88 S.Ct. 967], the [Supreme] Court fashioned a two-pronged test for the exclusion of identifications based upon impermissibly suggestive photo arrays. The first prong involves determination of whether the identification procedure was impermissibly suggestive. *If it was not, the court need proceed no further in its inquiry.* ...

> The second prong of *Simmons,* invoked only when a photospread has been deemed impermissibly suggestive, measures the reliability of the identification based on the totality of the circumstances....

(Emphasis added; citations omitted). Similarly, in *State v. Humphrey*, 789 S.W.2d 186, 190 (Mo.Ct.App.1990), the Court of Appeals of Missouri opined:

> A two step analysis is required to determine the admissibility of an out of court identification. . . . The first determination is whether the investigatory procedures employed by the police were impermissibly suggestive and, if so, then were so suggestive they created a "very substantial likelihood of an irreparable misidentification at trial." . . .

(Citations omitted.) *See also United States v. Sanchez*, 24 F.3d 1259, 1261 (10th Cir.1994) (regarding admissibility of identifications from photo arrays); *U.S. ex rel. Phipps v. Follette*, 428 F.2d 912, 914–15 (2d Cir.1970) (regarding admissibility of in-court identification where pre-trial identification was impermissibly suggestive); *United States v. Gomez Benabe*, 781 F.Supp. 848, 857–58 (D.P.R.1991) (regarding admissibility of identification from photo array), *aff'd*, 985 F.2d 607 (1st Cir.1993); *Jones v. Director of Patuxent Institution*, 351 F.Supp. 913, 941 (D.Md.1972) (regarding admissibility of in-court identification where pre-trial identification was impermissibly suggestive); *Coleman v. State*, 760 S.W.2d 356, 359 (Tex.App.1988) (regarding admissibility of identification from photo array). *See generally* Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* §§ 7.4(b) at 667–68, 7.4(c) at 673 (2d ed.1999).

### —*Suggestiveness of Identifications at Issue*—

■■ We shall assume *arguendo* that the post-conviction court was incorrect in its belief that "[t]he reliability issue is only reached if the court finds an impermissible suggestiveness in the photo array," and that reliability must be evaluated upon a mere showing of permissible suggestiveness. We nevertheless perceive no *reversible* error on the part of the post-conviction court. Our independent appraisal of the record satisfies us that the trial correct correctly determined that the identification was in no way suggestive, much less impermissibly so.

■ The post-conviction court's opinion was based on tacit acceptance of appellant's assertion that four of the five witnesses were either unable to identify appellant or made only tentative identifications after viewing the first array; after viewing the second array, their identifications "became more positive." Our review of the hearing on the motion to suppress convinces us, however, that this acceptance was clearly erroneous. Detective Rinehart, the sole witness at the hearing, simply did not testify that four witnesses viewed both arrays. He indicated only that one witness, whom he did not name, saw both arrays. According to Rinehart, that witness reported that he had seen the suspect only from the side. The witness was nevertheless shown photos with only frontal views. When the witness was unable to make an identification, he was shown the first array, which included side views. Detective Rinehart's testimony regarding the presentation of photo arrays to the other witnesses was either vague or nonexistent.

■ Ordinarily, our review of the denial of a motion to suppress evidence is "limited . . . to information contained in the record of the suppression hearing and not the record of the trial." *State v. Collins*, 367 Md. 700, 706–07, 790 A.2d 660 (2002). *See also Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491 (1999); *Simpler v. State*, 318 Md. 311, 312, 568 A.2d 22 (1990). Because, in a post-conviction proceeding such as this, we are concerned with defense strategy and possible prejudice to the defendant, we look also to the trial record. Appellant directs us to nothing in the trial transcript that would support his assertion that four of the five witnesses in question viewed both arrays, and our own review unearths no such evidence.[6]

---

6. Detective Rinehart testified at the post-conviction hearing that the arrays were shown to several people other than the witnesses in question. Appellant does not suggest that those persons testified at trial or that evidence was introduced regarding identifications they may have made. Thus, even if those persons viewed both arrays—and the record does not affirmatively establish as much—appellant could not have been prejudiced.

Rather, the trial transcript reflects that two of the five witnesses—Jaye Wilson and Jean Battle—made positive identifications of appellant after viewing only one array and apparently were not shown a second array. A third witness, Walter DeGrouchy, testified that he was shown one array and that he selected photos of appellant and one other person as resembling the assailant. There was no indication that DeGrouchy was ever shown another array. At trial, DeGrouchy stated that appellant looked like the person he saw at the crime scene, but added, "I honestly can't be totally positive." Witness Leslie Spicer testified that the police never showed him *any* photos, but that he called the police after seeing a photo of appellant in a newspaper and stated that the photo resembled the man he saw at the crime scene. Finally, Richard Desmaris—apparently the witness to whom detective Rinehart referred at the suppression hearing—testified that he was shown "frontal pictures" a few days after the shooting but could not identify anyone because he had only seen the suspect's profile.[7] Almost a year later, Desmaris was shown the second array, which consisted of frontal photos, but again could not make an identification. Desmaris asked the police to show him side-view photos, and the police then showed him the first array. Desmaris selected appellant's photo from that array.

Were we, like the post-conviction court, to accept appellant's assertion that four of the five witnesses viewed both arrays, we would agree with the post-conviction court's conclusion that the argument that the identification procedure was suggestive for that reason would not have swayed the trial court. Thus, we would agree with the post-conviction court that under the circumstances the trial court was not required to assess the reliability of the identifications.[8] "While we can readily envi-

---

**7.** Desmaris was apparently shown photos from the first array. We glean no explanation from the record as to why he was not shown the profile shots at the time.

**8.** It is significant to note that, despite the post-conviction court's statement that appellant "correctly contends that counsel failed to argue

sage a case in which the multiple inclusion of a suspect's photograph among a group of photographs shown to an identifying witness may be so emphasized or highlighted as to constitute a denial of due process . . ., we think each case must necessarily be judged on its own facts." *Thompson v. State,* 6 Md.App. 50, 53, 250 A.2d 304(1969) (no error in admitting photographic identification of the defendant where the police showed witnesses three different photos of the defendant in a group of approximately 50 photos). *See also Simmons,* 390 U.S. at 383–84, 88 S.Ct. 967 (declining to conclude that a trial court erred in admitting identifications of the defendant where the witnesses viewed group photos in which the defendant appeared several times, and explaining that the danger of misidentification increases if the police show a witness "pictures of several persons among which the photograph of a single . . . individual recurs several times or is in some way emphasized," but that each case must be considered on its own facts. . . .").

The trial court had before it all of the photos from both arrays. As the post-conviction court observed, the trial court unequivocally determined at the hearing on the motion to suppress that the photo arrays were not in any way sugges-

that the State's witnesses were unreliable thereby foreclosing the [trial] court's ability to suppress the array," the record of the suppression hearing reflects that trial counsel *did* attempt to make such an argument. Toward the close of the hearing, the prosecutor argued to the effect that, even if the court deemed the photo identification procedure to be impermissibly suggestive, there was no reason to believe it was unreliable. Defense counsel responded:

With respect to the *Manson* factors [regarding reliability], Your Honor, I certainly would have gone into all those factors which is a haven for Defense lawyers. But when I asked with respect to the first identification witness what the witness said, [the prosecutor] objected, and the Court sustained that, and I didn't want to violate the Court's order. If the Court's position is that I can delve into those factors, then I would ask to recall Detective Rinehart. I think the Court has enough before it to conclude—

THE COURT: Yeah

[DEFENSE COUNSEL]:—with respect to the newspaper issue what it—what the Court's going to decide.

The court thus indicated to defense counsel that the presentation of evidence as to reliability would be futile.

tive. As we have indicated, the transcripts of the hearing on the motion to suppress and the subsequent trial indicate that the first array contained black and white frontal photos and profile shots of each person. The second array contained color, frontal photos. The photos of appellant in the first array were a year older than the photo in the second array. Our own, unassisted review of the transcript reveals testimony that appellant's appearance had not changed dramatically in that year. Appellant directs us to nothing in the record, however, that would establish that his appearance was identical in the two photos. Given the obvious differences in the arrays, and the fact that the trial court viewed them and stated that there was "nothing suggestive" about them, we are not persuaded that the court would have or should have altered its view had trial counsel made the argument in question.

Appellant directs us to nothing in the record that would confirm that he complained to the post-conviction court of trial counsel's failure to argue that the first array was suggestive in that it contained left-side profile shots of only three of the six suspects. Assuming, without deciding, that this argument was made to the post-conviction court and is properly before this Court, we conclude that the post-conviction court properly rejected it.

It is apparent from the transcripts of the hearing on the motion to suppress and the trial that the first array included two photos of each of the six persons depicted: one frontal shot and one profile shot. Three of the profile shots, including appellant's, were taken from the left side. The other three were taken from the right side. Richard Desmaris testified to the effect that he had seen the suspect from the left side. Appellant directs us to nothing, however, that would indicate that any of the other witnesses specified the precise angle from which they viewed the suspect. Appellant's argument suggests that, in compiling a photo array, the police should be required to use photos that depict each person from each angle that each witness viewed the suspect. Clearly, such a

requirement would render impossible the compilation of an acceptable photo array.

## II

### Failure to Call Witness

As we have indicated, Davide Diggs' mother, Madeline Stokes, testified at trial to the effect that her son told her it was appellant who shot him. Appellant argued at the post-conviction hearing that, in light of this testimony, trial counsel's failure to call Frederick Hawkins as a defense witness constituted ineffective assistance of counsel.

Hawkins resided across the street from the house where the victim lived with his mother and his son. Hawkins testified at the post-conviction hearing that on the morning of the shooting he was walking out his front door when he heard gunshots. Hawkins then saw two men running in the victim's yard. His testimony proceeded as follows:

A And [Davide] hollered out, "Momma, I've been shot," and right after he said that he collapsed.

Q [defense counsel] What if anything did Madeline Stokes [do] at that time when [Davide] collapsed, if you know?

A Okay. Madeline started toward [Davide]. Well, she said, after he had hollered, "Momma, I've been shot," she said, "Well, who shot you?" And—

Q And did [Davide] respond?

A No he did not. He collapsed and then he got up again and he ran maybe another 10 or 15 feet and collapsed again.

The post-conviction court rejected appellant's argument that Hawkins' testimony would have contradicted the testimony of Madeline Stokes that the victim had identified appellant. The court reasoned:

Because of the gaps in Mr. Hawkins' ability to hear all of the dialogue that potentially could have taken place between the victim and Mrs. Stokes, the Court is not convinced that Mr. Hawkins, had he testified at the trial, would have

introduced a reasonable doubt as to Mr. Mendes' involvement in the death of Mr. Diggs. To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony "would have probably changed the outcome of the trial." *See State [Stewart] v. Nix,* 31 F.3d 741, 744 (8th Cir.1994). Therefore, trial counsel's failure to call Mr. Hawkins did not prejudice petitioner's cause and would likely not have resulted in a different conclusion had Mr. Hawkins testified.

Appellant now contends that, in reaching this conclusion, the post-conviction court misapplied the test for ineffective assistance of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant complains that the court failed to examine the first part of the test—whether counsel's representation fell below an objective standard of reasonableness—and focused only on the second prong of the test—"the prejudice arising out of counsel's error." Appellant further asserts that the court applied an "erroneous standard" in examining the second prong, looking to whether Hawkins' testimony would have created a "reasonable doubt" as to appellant's involvement in the crime rather than to whether "there was a substantial possibility that Mr. Hawkins' testimony would have resulted in a different outcome...."

■ Preliminary, we reiterate that "we need not find deficiency of counsel in order to dispose of a claim [of ineffective assistance of counsel] on the grounds of lack of prejudice." *Cirincione v. State,* 119 Md.App. 471, 485–86, 705 A.2d 96 (1998). The post-conviction court was not required to determine whether trial counsel's failure to call Hawkins to the stand fell below an objective standard of reasonableness before determining whether appellant was prejudiced by the failure.

This Court has made clear that, under *Strickland,* a defendant will be deemed to have been prejudiced by errors of counsel only if "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 138 Md.App. at 206, 771 A.2d 407 (citation omitted). As the above-quoted portion of the post-conviction court's opinion makes clear, while the court referenced the "reasonable doubt" standard it *also* expressed its conclusion that Hawkins' testimony probably would not have altered the outcome of the trial. Appellant's contention that the court applied the wrong standard is specious.

Our independent appraisal of the record convinces us, moreover, that the post-conviction court's determination was correct. Hawkins indicated at the hearing that Stokes was moving toward the victim but had not yet reached him when Hawkins heard her ask the victim who had shot him and observed that the victim failed to respond. Stokes testified at trial that it was not until she had reached the victim and was raising his shirt to see the bullet wounds that the colloquy took place. Hawkins admitted that he was out of earshot at that point. Hawkins' testimony that the victim did not answer Stokes' question as Stokes was running toward the victim in no way contradicted Stokes' testimony that the victim answered her when she was standing over him.[9]

### III

### Investigation of Alibi Witness

 Defense counsel called appellant's 17–year old son, Fortunato Mendes, III, as an alibi witness. Appellant's son testified to the effect that, at the time of the shooting, appellant was driving him to school. When asked by defense counsel why he remembered that particular morning, appellant's son responded: "I'm usually a little late, and my teacher noticed I was on time that day."

Thereafter, the State called the teacher in question as a rebuttal witness. The teacher told the court that on June 15,

---

9. Interestingly, another witness, Jaye Wilson, testified at trial that *she* was present when Stokes was removing the victim's shirt, and that she did not hear the victim say a word.

1988, when the shooting occurred, she was in Nashville, Tennessee, escorting a student to the national forensic league speech finals.

Appellant argued to the post-conviction court that trial counsel should have investigated the alibi provided by Fortunato Mendes, III and thus uncovered the inconsistency. The court disagreed and in its "Memorandum Opinion and Order" explained:

> The court finds that the fact that trial counsel did not further investigate the witness's alibi does not demonstrate ineffective assistance. On the contrary, trial counsel may not have wanted to investigate the matter too closely for fear of disqualifying a potential alibi witness. Further, it is even questionable whether trial counsel would have necessarily discovered the specific comment stated by the son regarding his teacher remarking as to his punctuality because it is likely that the son added this portion of his testimony as an afterthought. For these reasons and because case law indicates that it was not unreasonable for trial counsel to not further investigate an alibi witness furnished by the defendant, the court finds that trial counsel was not ineffective by not further investigating the alibi witness's testimony prior to his testimony.

Appellant now asserts that there was no suggestion at the post-conviction hearing that trial counsel's failure to investigate the witness' story was a deliberate, tactical decision. He points out that counsel specifically stated at the hearing that it was *not* a tactical decision—he simply believed that appellant's son was credible and that further investigation was unnecessary. Appellant concludes that "[c]ounsel's failure to investigate at all resulted in the defendant's son being portrayed as a liar, who was attempting to cover up for appellant."

As appellant asserts, the post-conviction court's observation that counsel's failure to investigate could have been a tactical decision is belied by the record. The court correctly concluded, however, that counsel's failure did not amount to ineffective assistance. In making this determination, we are mindful

of defense counsel's testimony at the post-conviction hearing that both appellant and appellant's wife provided him with the same alibi as did their son. As the post-conviction court observed, quoting *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir.1994), " 'the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representation.' "

The post-conviction court further recognized that in *Bassette v. Thompson*, 915 F.2d 932 (4th Cir.1990), the United States Court of Appeals for the Fourth Circuit was presented with a factual scenario nearly identical to that in the case *sub judice*. In *Bassette*, the defendant's niece, a college student, testified at the defendant's murder trial that when the murder was committed the defendant was with her, visiting the defendant's grandmother. The witness stated that "she remembered the date because she had noted the visit in a journal she was keeping for a class she was attending at [a] Community College." *Id.* at 935. In rebuttal, the State called the niece's college instructor, who testified that the journal assignment was not given until long after the date of the murder, and that she had not even met the defendant's niece until five months after the murder occurred. *See id.* After his conviction, the defendant petitioned for writ of *habeas corpus* and argued, *inter alia*, that his counsel had rendered ineffective assistance by failing to investigate the alibi. The petition was denied. In affirming the lower court's decision, the Fourth Circuit Court of Appeals explained:

> Appellant claims ineffective assistance of counsel because his trial attorney failed to conduct a sufficient investigation of his alibi witness … so as to realize that she was lying in her testimony. …
>
> This is not evidence of ineffective assistance of counsel, but is only evidence that Bassette introduced his attorney to a witness who was willing to lie under oath. … The circumstances in this case reflect that appellant produced certain relatives and close acquaintances who would testify that he was with them on the night of the murder. The attorney's

performance is not constitutionally defective in this instance because he did not go to the college and interview [the niece's] instructor in an effort to verify her testimony. There is no rule that counsel must disbelieve prospective witnesses presented to him by his client, or that he must spend considerable time and effort in testing the veracity of such witnesses or attempting to disprove their statements.

*Id.* at 939–40 (citation omitted).

In addition, as the post-conviction court observed, there was no indication that appellant's son mentioned his teacher's comment to counsel prior to trial. Until the witness stated on the stand that his teacher had commented that the witness was on time, appellant had no reason to believe that anyone would have noticed the witness' arrival at school that day. As we have indicated, the burden was on *appellant*—not on the State—to show that trial counsel's performance was deficient. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

## IV

### Appearance in Restraints Before Jury

At the start of the sixth day of trial, as appellant stood up when the judge entered the courtroom, defense counsel noticed that appellant was wearing restraints.[10] Appellant apparently had been led into the courtroom after the jury was impaneled and had been wearing the restraints at that time. Defense counsel approached the bench, leaving appellant at the trial table, and told the court:

[H]e's got leg irons on right now in front of the jury. Can you believe this? ... They come in here and put chains on him. I mean, this is outrageous.

---

10. Appellant states on appeal that "[t]here is no question that the jury viewed Appellant in leg irons, shackles, and chains." Although both appellant and a former juror, Stephen McCoy, testified at the post-conviction hearing that appellant was also wearing handcuffs, appellant makes no mention of the handcuffs in his brief. There is no mention in the pertinent portion of the trial record of appellant wearing handcuffs.

Defense counsel added: "I didn't see it until he stood up just [now.]" Counsel made several more statements to the court which are reflected as "inaudible" in the trial transcript. The court cautioned counsel to "[j]ust calm down."

The court then excused the jury and directed the deputy sheriff to "take the leg irons off." The court instructed the deputy sheriff: "Never bring a man in here standing trial with either handcuffs or leg irons again." The jury was then recalled. The trial record does not reflect what transpired at that time, but former juror Stephen McCoy testified at the post-conviction hearing that when the jurors re-entered the courtroom the court instructed them that "Mr. Mendes has been brought in in shackles and to disregard that. . . ." The trial then resumed.

In *Holbrook v. Flynn*, 475 U.S. 560, 568–69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the Supreme Court observed that an "inherently prejudicial practice . . ., like shackling, should be permitted only where justified by an essential state interest specific to each trial." *See also Bruce v. State*, 318 Md. 706, 721, 569 A.2d 1254 (1990) ("shackling during trial . . . can only be justified by compelling state interests in the specific case"). As the Court of Appeals has explained:

> There are three essential state interests which may justify physically restraining a defendant: Preventing the defendant's escape, protecting those in the courtroom, and maintaining order in the courtroom. Unless one or more of these factors outweigh any prejudice to the defendant, physical restraint is inappropriate.

*Hunt v. State*, 321 Md. 387, 410, 583 A.2d 218 (1990).

Appellant argued at the post-conviction hearing that trial counsel was ineffective in failing to move for a mistrial or to request a curative instruction. The post-conviction court accepted the State's evidence that a curative instruction had in fact been given, although the instruction was not reflected in the trial record. The court rejected appellant's argument that trial counsel was ineffective and reasoned:

> The minimal, if any, prejudice caused to Mr. Mendes by his brief appearance before the jury in shackles would not warrant a mistrial had one been requested. Therefore, the court finds that trial counsel was not ineffective by not requesting a mistrial and because the trial judge delivered a curative instruction the court finds that any minimal prejudice that may have occurred, was cured.

The court added that, even without a curative instruction, any prejudice would have been *"de minimis."*

Appellant argues on appeal that the post-conviction court miscalculated the amount of time that he spent in restraints before the jury. For that reason, he argues, the court underestimated that amount of prejudice he suffered and erred in determining that trial counsel was not ineffective. There is no dispute that no essential State interest justified the physical restraint of appellant before the jury.

In *Bruce,* 318 Md. 706, 569 A.2d 1254, the Court of Appeals was faced with a similar situation. In that case, a security officer was removing handcuffs from the appellant as the jury was led into the courtroom. On appeal, the appellant argued that the trial court should have *sua sponte* declared a mistrial or issued a curative instruction. The Court of Appeals rejected the argument, stating: "This one inadvertent viewing of Appellant in handcuffs clearly did not require the trial judge to take any action *sua sponte,* and did not result in any prejudice to the defendant's right to a fair trial." *Cf. Lovell v. State,* 347 Md. 623, 650, 702 A.2d 261 (1997) (trial court erred by permitting the shackling of the defendant throughout the entire sentencing proceeding without conducting an individualized evaluation of the need therefor); *Bowers v. State,* 306 Md. 120, 138, 507 A.2d 1072 (1986) (trial court properly permitted shackling of defendant during sentencing proceeding where court was aware of "previous institutional difficult[ies] with [the defendant] and of problems in [the defendant's] personality . . .").

The trial record reflects that only two minutes elapsed from the time the trial judge entered the courtroom to the time the

jury was excused and appellant's restraints were removed. Appellant suggests that he was in the courtroom with the jurors for a significant period of time before the judge entered the courtroom; defense counsel noticed the restraints; and the matter was brought to the court's attention. McCoy, the former juror, testified at the post-conviction hearing, however, that trial counsel approached the bench regarding the restraints "immediately" upon appellant's entrance into the courtroom. Appellant has failed to meet his burden of establishing a reasonable probability that a mistrial would have been granted had trial counsel requested one.

## V

### Cumulative Effect of Errors

This Court has explained that, in a post-conviction proceeding concerning the assistance of counsel,

> even when no single aspect of the representation falls below the minimum ... standards required under the Sixth Amendment, the cumulative effect of counsel's entire performance may still result in a denial of effective assistance.... [T]his cumulative effect may be applied to either prong of the *Strickland* test. That is, numerous non-deficient errors may cumulatively amount to a deficiency, ... or numerous non-prejudicial deficiencies may cumulatively cause prejudice....

*Cirincione*, 119 Md.App. at 506, 705 A.2d 96 (citations omitted). *See also Bowers v. State*, 320 Md. 416, 436, 578 A.2d 734 (1990) ("Even when individual errors may not be sufficient to cross the threshold, their cumulative effect may be"); *Schmitt v. State*, 140 Md.App. 1, 46, 779 A.2d 1004 ("in assessing the overall trial performance [of counsel] ..., we will aggregate all the errors or lapses that may be found to have occurred"), *cert. denied*, 367 Md. 88, 785 A.2d 1291 (2001). Appellant thus argued to the post-conviction court, and argues to this Court, that even if the individual errors committed by trial counsel did not amount to ineffective assistance, "there is a substantial

possibility that the outcome of Appellant's trial would have been different" but for the cumulative effect of the errors.

The post-conviction court rejected this argument and explained: "The court finds that the prejudice and/or error that may have occurred are minute nonexistent so as to render the cumulative nature of any error significant." Appellant now contends that the court's reasoning was flawed in that, in appellant's view, "there is no dispute that errors did occur at trial and these errors did cause some prejudice...." We are not persuaded.

The post-conviction court did not mischaracterize the nature of counsel's "errors" or the prejudice to appellant. As we have explained, despite the post-conviction court's tacit acceptance of appellant's allegation that two photo arrays containing appellant's photo were shown to four of the five witnesses who identified appellant as being present at the crime scene, the record reflects that only one witness was shown two arrays. That witness indicated that he could not identify appellant from *any* photos showing frontal views; he specifically asked to see profile shots. Appellant failed to establish, moreover, that there was a reasonable probability that the additional arguments regarding the suggestiveness of the identification procedure would have changed the outcome of the trial. Likewise, appellant failed to establish that, had counsel called Frederick Hawkins to the stand, Hawkins' testimony would have contradicted Madeline Stokes' testimony that the victim identified appellant as the man who shot him. Appellant did not establish that trial counsel was in any way derelict in failing to investigate the alibi provided by appellant's son—an alibi that, according to counsel, was confirmed by both appellant and his wife. Finally, appellant failed to establish a reasonable probability that, if defense counsel had moved for a mistrial when appellant was brought into court in restraints, the motion would have been granted.

As the Court of Appeals commented in rejecting a similar argument in *Gilliam v. State,* 331 Md. 651, 686, 629 A.2d 685 (1993), "This is not a case where the cumulative effect of

**54**

numerous interrelated errors in aggregate amount to inadequate representation. This is more a case of the mathematical law that twenty times nothing is still nothing." The petition for post-conviction relief was properly denied.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**